David RASMUSSEN and Lisa A. Lindsay,
Plaintiffs-Appellants-Petitioners,

v.

GENERAL MOTORS CORPORATION, General Motors
of Canada, Ltd., Ford Motor Company, Ford
Motor Company of Canada, Ltd., Toyota Motor
Corporation, Toyota Motor Sales USA, Inc.,
Toyota Canada, Inc., Honda Motor Company, Ltd.,
America Honda Motor Company, Inc., Honda
Canada, Inc., Daimler Chrysler, Daimler Chrysler
Canada, Inc., Mercedes Benz Canada, Inc., Nissan
North America, Inc., Nissan Canada, Inc., BMW
of North America, Inc., BMW Canada, National
Automobile Dealers Association and Canadian
Automobile Dealers Association, Defendants,

NISSAN MOTOR CO., LIMITED,
Defendant-Respondent.

Supreme Court

*No. 2007AP35. Oral argument January 5, 2011.*
*—Decided July 1, 2011.*

1

2011 WI 52

(Also reported in 803 N.W.2d 623.)

For the plaintiffs-appellants-petitioners there were briefs and oral argument by *Owen Thomas Armstrong, Jr., von Briesen & Roper, S.C.,* Milwaukee.

For the defendant-respondent there were briefs and oral argument *by Daniel L. Goldberg, Bingham McCutchen, LLP,* Boston, MA.

An amicus curiae brief was filed by *Katherine Stadler, Bryan J. Cahill* and *Godfrey & Kahn, S.C.,* Madison and *Andrew C. Cook,* Madison for *the Wisconsin Civil Justice Council, Inc.*

An amicus curiae brief was filed by *Jamison E. Lynch* and *Mayer Brown LLP,* Chicago and *Dan Himmelfarb* (admitted *pro hac vice), Brian J. Wong* (admitted *pro hac vice)* and *Mayer Brown LLP,* Washington, DC. For *the Association of International Automobile Manufacturers, Inc.* and *the Organization for the International Investment.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review an unpublished decision of the court of appeals[1] affirming the circuit court's[2] order dismissing for lack of personal jurisdiction a defendant, the Japan-based Nissan Motor Company (Nissan Japan), from David Rasmussen's (Rasmussen) class-action lawsuit. The issue presented to this court is whether Wisconsin has

---

[1] *Rasmussen v. Gen. Motors Corp.,* No. 2007AP35, unpublished slip op. (Wis. Ct. App. May 20, 2010).

[2] The Honorable John A. Franke of Milwaukee County presided.

4

general personal jurisdiction over Nissan Japan.[3] Accordingly, we are asked to address whether under Wis. Stat. § 801.05(1)(d) (2007–08),[4] Wisconsin's long-arm statute granting general personal jurisdiction over individuals engaged in "substantial and not isolated activities within" Wisconsin, Nissan Japan is subject to general personal jurisdiction here. If the answer to that question is yes, we are asked to decide whether the exercise of general personal jurisdiction over Nissan Japan comports with due process.

¶ 2. Rasmussen contends that Wisconsin has general personal jurisdiction over Nissan Japan[5] under Wis. Stat. § 801.05(1)(d) based on the "substantial and not isolated activities" of Nissan North America, Inc. (Nissan North America),[6] Nissan Japan's wholly owned subsidiary. For the reasons set out below, we conclude that even assuming *arguendo* that Nissan North America were the agent of Nissan Japan, absent control by Nissan Japan sufficient to cause us to disregard the separate corporate identities of Nissan Japan and Nissan North America, the activities of the subsidiary corporation are insufficient to subject its nonresident parent corporation to general personal jurisdiction under § 801.05(1)(d). We also conclude that Rasmussen

---

[3] Rasmussen seeks only general personal jurisdiction before us; however, at the circuit court, Rasmussen sought both general personal jurisdiction and specific personal jurisdiction.

[4] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[5] Nissan Japan is a corporation organized and existing under the laws of Japan. Nissan North America, Inc. is a corporation organized and existing under the laws of the State of California.

[6] Nissan North America, Inc. was formerly known as Nissan USA, and at points throughout the record is referred to as such. However, at the time of this litigation, its name had been changed to Nissan North America, Inc.

5

has not met his burden to show that the corporate separateness of Nissan Japan and Nissan North America should be disregarded such that the activities of Nissan North America in Wisconsin should be imputed to Nissan Japan. Accordingly, the statutory prerequisites for general personal jurisdiction under § 801.05(1)(d) have not been met.

¶ 3. Because we conclude that the statutory requirements for general personal jurisdiction have not been met, we need not discuss whether exercising general personal jurisdiction over Nissan Japan comports with due process. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 4. On September 18, 2003, Rasmussen filed a class-action complaint against numerous automobile companies, including Nissan Japan and its wholly owned subsidiary, Nissan North America. The complaint alleges that the automobile company defendants violated Wisconsin's antitrust and conspiracy laws. Namely, Rasmussen alleges that defendants conspired to restrain "competition in the sale and lease of new cars in Wisconsin and throughout the United States" by "eliminat[ing] the import[ing] of [lower priced] new cars from Canada into the United States and thereby rais[ing], fix[ing], stabiliz[ing] or maintain[ing] prices of new automobiles sold or leased in the State of Wisconsin . . . at artificially high levels."[7]

¶ 5. The complaint further alleges that in an effort to advance a price-fixing scheme, the defendants required their United States dealers to, among other things, refuse to honor new car warranties on cars

---

[7] Compl., ¶¶ 72–73.

imported from Canada and refuse to provide recall information relating to new cars imported from Canada.[8] According to the complaint, the defendants required their Canadian car dealers to investigate prospective buyers in an effort to identify buyers who may export the automobiles for resale in the United States, and to refuse to sell to those buyers.[9] Rasmussen alleged that Canadian dealers were also required to enter into "No Export" agreements with their customers that required the customer to pay a percentage of the car's value if the car was later found to have been resold in the United States.[10]

¶ 6. On December 22, 2003, Nissan Japan moved to dismiss the action against it for lack of personal jurisdiction. With regard to Wis. Stat. § 801.05(1)(d),[11] Nissan Japan argued that it fell outside the scope of this provision because it did not engage in any activities, much less substantial activities, in Wisconsin. Moreover, Nissan Japan argued that it was not subject to personal

---

[8] *Id.*, ¶ 74.

[9] *Id.*, ¶ 75.

[10] *Id.*

[11] For the purposes of this opinion, the relevant portions of Wisconsin's long-arm statute, Wis. Stat. § 801.05, read:

> Personal jurisdiction, grounds for generally. A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:
>
> (1) Local presence or status. In any action whether arising within or without this state, against a defendant who when the action is commenced:
>
> . . .
>
> (d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.

7

jurisdiction based on the activities of Nissan North America because Nissan Japan and Nissan North America are separate and distinct corporations, with their own respective employees, facilities and records. In addition, Nissan Japan maintained that Nissan North America has never been an agent or instrumentality of Nissan Japan.

¶ 7. On April 5, 2004, a hearing was held on Nissan Japan's motion to dismiss for lack of personal jurisdiction. Following the hearing, the circuit court[12] denied Nissan Japan's motion without prejudice. The circuit court then ordered a period of jurisdictional discovery, after which time Nissan Japan would be free to renew its motion to dismiss for lack of personal jurisdiction.[13]

¶ 8. After more than two years of discovery, the circuit court held a jurisdictional hearing. At that hearing, Rasmussen argued that general personal jurisdiction was proper under Wis. Stat. § 801.05(1)(d) for two reasons. First, Rasmussen argued that under the definition of "manufacturer" in Wisconsin's Lemon Law, Wis. Stat. § 218.0171, Nissan North America is the agent of Nissan Japan, and therefore it is proper to impute the activities of Nissan North America to Nissan Japan.[14]

---

[12] The Honorable Dennis P. Moroney of Milwaukee County presided over many of the initial hearings.

[13] Rasmussen filed a motion to compel discovery on June 4, 2004. On June 24, 2004, the circuit court ordered Nissan Japan to respond to specific discovery requests of Rasmussen. The court also appointed a Special Master to handle any future discovery disputes. As part of the discovery process, the parties entered into a Joint Written Report of the stipulations agreed upon by the parties.

[14] At the circuit court hearing, Rasmussen acknowledged that this was the first time Wisconsin's Lemon Law, Wis. Stat. § 218.0171, was mentioned as a basis for general personal

8

Second, Rasmussen argued that under the alter-ego theory of jurisdiction, Nissan Japan had sufficient control over Nissan North America to warrant exercise of general personal jurisdiction over Nissan Japan.[15]

¶ 9. Nissan Japan contended that Rasmussen's Lemon Law-agency argument had no merit because Nissan Japan is not a warrantor and Nissan Japan has never been brought into any Lemon Law case "under any theory let alone a theory of agency."[16] Moreover, with regard to the alter-ego theory of jurisdiction,

jurisdiction. Rasmussen's attorney admitted, "And there's a particular statute that I'm embarrassed not to have called to the Court's attention before . . . that statute, Your Honor, is 218.0171(c)."

[15] At oral arguments to this court, however, Rasmussen mentioned a slightly different agency-based ground on which he contended that Wisconsin courts have general personal jurisdiction over Nissan Japan. Rasmussen argued that Nissan North America and Nissan North America's dealers perform Nissan Japan's nondelegable contractual duties in Wisconsin under Wisconsin's Lemon Law. "The [L]emon [L]aw is a warranty enforcement statute." *Dieter v. Chrysler Corp.*, 2000 WI 45, ¶ 26, 234 Wis. 2d 670, 610 N.W.2d 832; Wis. Stat. § 218.0171(2)(a). However, it does not necessarily make the automobile dealers the agents of the manufacturer. *Malone v. Nissan Motor Corp. in U.S.A.*, 190 Wis. 2d 436, 442–43, 526 N.W.2d 841 (Ct. App. 1994). Furthermore, nothing in the record supports the contention that Nissan Japan has any warranty obligations in Wisconsin.

[16] Counsel for Nissan Japan also contended that by arguing for the first time that there was general personal jurisdiction based on the Lemon Law, Rasmussen violated his duties to respond to interrogatories. Nissan had served Rasmussen with an interrogatory asking the bases for jurisdiction, and in the response, Rasmussen did not mention a Lemon Law basis. In rebuttal arguments, Rasmussen argued he did not violate the duty to respond to interrogatories because "in the plaintiffs' discovery responses to Nissan, we had indicated we believed there was agency. We simply had not cited 218.0171."

9

Nissan Japan argued that the day-to-day functioning of Nissan North America is reserved to Nissan North America, and there is no basis to conclude that the relationship between Nissan Japan and Nissan North America contravenes corporate formalities.

¶ 10. At the conclusion of the hearing, the circuit court made findings of fact on the jurisdictional issues that relate to the conspiracy to price fix that Rasmussen alleged. The findings relevant to this review are:

- "In terms of general jurisdiction under Section 801.05(1)(d), it seems absolutely clear that this section cannot be satisfied directly. It is only satisfied if one accepts the plaintiffs' argument and alleged showing that the activities of the subsidiary should be imputed to the parent."

- "[A]s to Nissan Japan . . ., there is not evidence of complete control or the sort of domination that requires that we fold one corporate entity into another for these purposes. There's been no significant showing, no showing at all really that corporate formalities were disregarded and certainly no evidence of fraud or undercapitalization."

- "[T]here has not been a showing that there was not independent decision-making by the subsidiary."

- "There appears to have been observance of formal corporate legal requirements, at least no showing to the contrary."[17]

¶ 11. Based on these findings of fact, the circuit court concluded that "there has clearly been a failure to demonstrate the corporate veil ought to be pierced[,] or that on any other theory, jurisdiction over Nissan Japan could be obtained because the subsidiary was simply a

---

[17] These findings of fact have not been challenged on appeal.

tool or an extension of the parent." Accordingly, the court dismissed Nissan Japan from the suit based on a lack of personal jurisdiction.

¶ 12. Rasmussen appealed and the court of appeals affirmed the dismissal. *Rasmussen v. Gen. Motors Corp.,* No. 2007AP35, unpublished slip op. (Wis. Ct. App. May 20, 2010). The court of appeals, relying on *Insolia v. Philip Morris Inc.,* 31 F. Supp. 2d 660 (W.D. Wis. 1998), held that "the only provision of [Wisconsin's] personal jurisdiction statute authorizing personal jurisdiction over a parent corporation based on an agency relationship with its subsidiary is Wis. Stat. § 801.05(4)(a), which allows for specific personal jurisdiction." *Rasmussen,* No. 2007AP35, unpublished slip op., ¶ 23. Therefore, an agency theory provides no basis on which to ground general personal jurisdiction pursuant to § 801.05(1)(d), based on the acts of the nonresident parent's subsidiary. *Id.* The court noted, "the corporate structure and corresponding presumption of separateness requires more than an agency theory to assert general jurisdiction over a parent corporation."[18] *Id.*

¶ 13. We granted review and now affirm the court of appeals.

---

[18] Rasmussen advanced two additional arguments to the court of appeals: (1) that there was specific personal jurisdiction over Nissan Japan pursuant to Wis. Stat. § 801.05(4); and (2) that if the court concluded that there was no personal jurisdiction over Nissan Japan, the case should be remanded to allow Rasmussen to conduct jurisdictional discovery directly on Nissan Japan. *Rasmussen,* No. 2007AP35, unpublished slip op., ¶¶ 24–31. The court of appeals held against Rasmussen on both accounts. Rasmussen does not challenge the conclusion that there is no basis for specific personal jurisdiction over Nissan Japan or the denial of additional discovery.

11

## II. DISCUSSION

### A. Standard of Review

■

¶ 14. Whether there is personal jurisdiction under Wisconsin's long-arm statute is a question of law that we review independently. *Kopke v. A. Hartrodt S.R.L.,* 2001 WI 99, ¶ 10, 245 Wis. 2d 396, 629 N.W.2d 662. While our review is independent, we benefit from the analyses of the circuit court and the court of appeals. *State v. Aufderhaar,* 2005 WI 108, ¶ 10, 283 Wis. 2d 336, 700 N.W.2d 4. We will not reverse the factual findings of the circuit court unless they are clearly erroneous. Wis. Stat. § 805.17(2). Stated otherwise, findings of fact will not be disturbed on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *State v. Arias,* 2008 WI 84, ¶ 12, 311 Wis. 2d 358, 752 N.W.2d 748.

### B. Long-Arm Personal Jurisdiction Principles

¶ 15. Under Wisconsin's long-arm statute, personal jurisdiction over nonresident defendants is of two basic types: general personal jurisdiction and specific personal jurisdiction.[19] If general personal jurisdiction is accorded over a nonresident defendant, the defendant may be brought before Wisconsin courts for claims

_____

[19] "Personal jurisdiction" is distinct from "subject matter jurisdiction" in that personal jurisdiction refers to the court's power to exercise jurisdiction over a given individual. *See generally, State v. Muentner,* 138 Wis. 2d 374, 382, 406 N.W.2d 415 (1987). By contrast, subject matter jurisdiction is the power under the Wisconsin Constitution to hear a particular controversy. *See Vill. of Trempealeau v. Mikrut,* 2004 WI 79, ¶ 8, 273 Wis. 2d 76, 681 N.W.2d 190.

that are unrelated to the defendant's activities in Wisconsin. *Insolia,* 31 F. Supp. 2d at 668. On the other hand, specific personal jurisdiction is more limited in nature. In the exercise of specific personal jurisdiction, the claim for relief for which personal jurisdiction is sought must be substantially connected to or arise out of the defendant's contacts with Wisconsin. *Id.*

¶ 16. In determining whether personal jurisdiction may be exercised over a nonresident defendant, we employ a two-step inquiry. *Kopke,* 245 Wis. 2d 396, ¶ 8. The first step is to determine whether the defendant meets the criteria for personal jurisdiction under the Wisconsin long-arm statute. *Id.* If the requirements set out in the long-arm statute are satisfied, "then the court must consider whether the exercise of jurisdiction comports with due process requirements." *Id.* at 409.

¶ 17. The plaintiff has a "minimal burden" of showing that the statutory and constitutional requirements are met. *Id.* In performing this jurisdictional analysis, "we may consider documentary evidence and weigh affidavits in reaching a determination as to whether this burden has been met. Factual doubts are to be resolved in favor of the plaintiff." *Id.* (internal quotation marks and citation omitted). Finally, the Wisconsin long-arm statute is to be construed liberally in favor of the exercise of personal jurisdiction. *Clement v. United Cerebral Palsy of S.E. Wis., Inc.,* 87 Wis. 2d 327, 332, 274 N.W.2d 688 (1979).

C. Wisconsin Stat. § 801.05(1)(d)

¶ 18. Pursuant to Wis. Stat. § 801.05(1), Wisconsin courts may exercise general personal jurisdiction over a defendant when that defendant takes up "local

13

presence or status" within the state.[20] *See Druschel v. Cloeren,* 2006 WI App 190, ¶¶ 7–8, 295 Wis. 2d 858, 723 N.W.2d 430. Subsection (d) provides that a nonresident defendant has the requisite "local presence or status" when he or she "[i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." When the statutory criteria set out in § 801.05(1)(d) are met, general personal jurisdiction may nevertheless be limited by the requirements of due process. *Vt. Yogurt Co. v. Blanke Baer Fruit & Flavor Co.,* 107 Wis. 2d 603, 607, 321 N.W.2d 315 (Ct. App. 1982).

¶ 19. In evaluating whether general personal jurisdiction lies over a nonresident defendant pursuant to Wis. Stat. § 801.05(1)(d), we must determine whether the defendant has engaged in "substantial and not isolated activities" in Wisconsin.[21] Our examination encompasses the defendant's general contacts with the state. The factors we consider are the quantity of the contacts, the nature and quality of those contacts, the source and connection of the contacts to the claim made, the interest of Wisconsin in the action and the convenience of the parties. *Nagel v. Crain Cutter Co.,* 50

---

[20] Other subsections of Wis. Stat. § 801.05 provide for the exercise of specific personal jurisdiction over a particular defendant. *E.g.,* § 801.05(4). Specific personal jurisdiction is proper "when the case itself arises out of or is related to the defendant's contact with the state." *Druschel v. Cloeren,* 2006 WI App 190, ¶ 18, 295 Wis. 2d 858, 723 N.W.2d 430 (quoting *Harley-Davidson Motor Co. v. Motor Sport, Inc.,* 960 F. Supp. 1386, 1391 (E.D. Wis. 1997)). As aforementioned, Rasmussen has abandoned his arguments that Nissan Japan is subject to specific personal jurisdiction.

[21] Wisconsin Stat. § 801.05(1)(d) "corresponds in a general way to the 'doing business' statute common in other states." *Nagel v. Crain Cutter Co.,* 50 Wis. 2d 638, 646, 184 N.W.2d 876 (1971).

Wis. 2d 638, 648, 184 N.W.2d 876 (1971). We consider the jurisdictional factors in relation to each other, recognizing that the contacts would have to be more significant in order to subject a defendant to general personal jurisdiction than if specific personal jurisdiction were sought. *Id.*

¶ 20. Although we do not discuss due process directly in the first step of a personal jurisdiction analysis, the legislative history underlying Wis. Stat. § 801.05(1)(d) shows that the statutory criteria and due process are intertwined. This is so because § 801.05 "was intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requisites of due process of law."[22] *Flambeau Plastics Corp. v. King Bee Mfg. Co.,* 24 Wis. 2d 459, 464, 129 N.W.2d 237 (1964), *overruled on other grounds by Pavalon v. Thomas Holmes Corp.,* 25 Wis. 2d 540, 131 N.W.2d 331 (1964); *see also Vt. Yogurt,* 107 Wis. 2d at 607 (explaining that "the legislature's purpose in creating the various subsections of the long-arm statute was to codify the due process requirements of 'minimum contacts' required under *International Shoe Co. v. Washington,* 326 U.S. 310 (1945)").

¶ 21. The five factors that we have considered in our due process analysis are: (1) the quantity of defendant's contacts; (2) the nature and quality of

---

[22] In *Flambeau Plastics Corp. v. King Bee Manufacturing Co.,* 24 Wis. 2d 459, 129 N.W.2d 237 (1964), *overruled on other grounds by Pavalon v. Thomas Holmes Corp.,* 25 Wis. 2d 540, 131 N.W.2d 331 (1964), we addressed jurisdiction under Wis. Stat. § 262.05 (1963), the predecessor statute to Wis. Stat. § 801.05. However, the relevant provisions to this appeal, the former § 262.05(1)(d) and the current § 801.05(1)(d), contain identical language. Therefore, the purpose behind § 262.05(1)(d) is rightfully attributable to § 801.05(1)(d).

defendant's contacts; (3) the source and connection of the cause of action with those contacts; (4) the interests of Wisconsin in the action; and (5) the convenience to the parties of employing a Wisconsin forum. *Clement,* 87 Wis. 2d at 334–35; Vt. Yogurt, 107 Wis. 2d at 608. Because of the due process concerns that underlie the statutory criteria for personal jurisdiction, there are occasions, such as occurred in *Nagel* discussed above, when some of the due process factors also are employed in the statutory analysis. *See also Insolia,* 31 F. Supp. 2d at 668; *Vt. Yogurt,* 107 Wis. 2d at 608.

¶ 22. Occasionally, the "substantial and not isolated activities" language has been examined in light of the activities of someone other than the defendant for whom personal jurisdiction is sought, such as an agent of a corporation or the subsidiary of a nonresident parent corporation. In those circumstances, we examine the relationship between the nonresident defendant and the alleged agent or corporation who conducted activities in Wisconsin. When a corporation is involved, discussions generally focus on the functional integrity, or lack thereof, of the corporate form of existence.

¶ 23. In *Pavalon v. Fishman,* 30 Wis. 2d 228, 140 N.W.2d 263 (1966), we were asked to determine whether the brokerage firm that handled Pavalon's purchase of a note and stock warrant was the agent of the defendant so that the court had specific personal jurisdiction over the defendant under Wis. Stat. § 262.05(5)(e) (1965).[23] *Id.* at 233–35. We noted that "[t]he general rule, in Wisconsin as well as elsewhere, is that brokers, whether employed for a single transaction or a series of

---

[23] Wisconsin Stat. § 262.05(5)(e) (1965), a provision involving specific personal jurisdiction, is not part of the current statutory scheme relative to personal jurisdiction of nonresident defendants.

transactions, are agents." *Id.* at 235. The circuit court concluded that an agency relationship existed based on this general principle, as well as on several documents that listed the brokerage firm as "agent." *Id.*

¶ 24. While *Pavalon* could be cited as support for the premise that the acts of an agent may be sufficient to support specific personal jurisdiction over a nonresident defendant under some circumstances, no Wisconsin appellate court has held that an agency relationship, without consideration of any other factor, is sufficient to support general personal jurisdiction over a nonresident defendant.[24] As *Insolia* correctly notes, no other provision of Wisconsin's long-arm statute besides Wis. Stat. § 801.05(4), which relates to specific personal jurisdiction, "supports the exercise of jurisdiction based on an agency theory." *Insolia,* 31 F. Supp. 2d at 671. Specific personal jurisdiction is not at issue in the case before us.

¶ 25. Although the concept of piercing the corporate veil generally is associated with attaching liability for corporate actions to someone other than the corporation, the analysis is somewhat similar to the analysis we employ in evaluating whether there is general personal jurisdiction under Wis. Stat. § 801.05 over a nonresident defendant for the acts of another. Consider, for example, *Consumer's Co-op of Walworth County v. Olsen,* 142 Wis. 2d 465, 419 N.W.2d 211 (1988), where

[24] In *Pavlic v. Woodrum,* 169 Wis. 2d 585, 486 N.W.2d 533 (Ct. App. 1992), the court of appeals considered specific personal jurisdiction, pursuant to Wis. Stat. § 801.05(4). *Id.* at 590–91. The court of appeals concluded that a shareholder-officer was not the agent of the failed corporation such that there was specific personal jurisdiction over the shareholder-director. The court of appeals did not examine general personal jurisdiction in *Pavlic.*

17

we were asked to pierce the corporate veil and impute the actions of a corporation to its shareholders so that a judgment against the corporation would become the shareholders' liability. *Id.* at 470. We noted that under the law, a corporation is treated as an entity separate from its shareholders and that separateness is not to be lightly disregarded. *Id.* at 474. However, we explained that corporate separateness could be disregarded when observing it "would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." *Id.* at 475 (quoting *Milwaukee Toy Co. v. Indus. Comm'n of Wis.,* 203 Wis. 493, 496, 234 N.W. 748 (1931)). We also explained that corporate separateness could be disregarded where the shareholders "made no serious attempt to hold corporate meetings or to maintain records of corporate meetings and that the corporation had no substantial assets." *Id.* (brackets and citation omitted). We concluded that the plaintiff had not met its burden to show that corporate integrity should be disregarded; and therefore, we did not permit the plaintiff to pierce the corporate veil. *Id.* at 488.

¶ 26. The relationship between corporations has generated significant discussion about the conditions under which the actions of one corporation are sufficient to impute those actions to another corporation. For example, in *Kerl v. Dennis Rasmussen, Inc.,* 2004 WI 86, 273 Wis. 2d 106, 682 N.W.2d 328, we examined the relationship between a franchisor and franchisee when plaintiffs asserted a vicarious liability claim against the franchisor based on the alleged negligence of the franchisee. We concluded that "a franchisor may be held vicariously liable for the tortious conduct of its franchisee only if the franchisor has control or a right of control over the daily operation of the specific aspect of

18

the franchisee's business that is alleged to have caused the harm." *Id.*, ¶ 7. We noted that a master servant relationship is a type of agency and unless the agent is also a servant, vicarious liability generally cannot flow to the master. *Id.*, ¶ 20.[25]

¶ 27. In *Conservatorship of Prom v. Sumitomo Rubber Industries, Ltd.*, 224 Wis. 2d 743, 592 N.W.2d 657 (Ct. App. 1999), the court of appeals discussed whether a corporation that distributed its tires through a wholly owned subsidiary transacted business in Wisconsin such that the Secretary of State was a proper agent for service of process on the corporation. In its discussion, the court of appeals affirmed the long held rule that "[t]he mere existence of a parent-subsidiary relationship between two corporations is not sufficient to provide a court with jurisdiction." *Id.* at 760. The court of appeals explained that in order for a subsidiary to provide the necessary connections to Wisconsin, "the record must establish that the parent corporation had control over the subsidiary corporation . . . to such an extent that the separate corporate identity of the subsidiary should be disregarded." *Id.* The court of appeals noted that *Cemetery Services, Inc. v. Wisconsin Department of Regulation & Licensing*, 221 Wis. 2d 817, 827, 586 N.W.2d 191 (Ct. App. 1998), lists 15 factors that may be considered in determining whether the requisite control exists. *Conservatorship of Prom*, 224 Wis. 2d at 760–61.

---

[25] We did note one exception to that rule of agency, the nondelegable duty exception. When the agent performs nondelegable duties of the principal as an independent contractor, the agent may subject the principal to vicarious liability. *Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 20 n.2, 273 Wis. 2d 106, 682 N.W.2d 328 (citing *Arsand v. City of Franklin*, 83 Wis. 2d 40, 54 n.8, 264 N.W.2d 579 (1978)).

19

## D. Application of Wis. Stat. § 801.05(1)(d)

¶ 28. In regard to whether Wis. Stat. § 801.05(1)(d) accords general personal jurisdiction over Nissan Japan, Rasmussen argues that the "substantial and not isolated activities" of Nissan North America are imputed to Nissan Japan either through an agency theory[26] or because Nissan Japan exercised sufficient control over Nissan North America to override the corporate integrity of Nissan North America.[27]

---

[26] Rasmussen did not advance arguments to this court as to why Nissan North America was Nissan Japan's agent. Instead, Rasmussen argued that if a determination of whether Nissan North America was or was not the agent of Nissan Japan was necessary to our review, we should remand that question to the court of appeals.

Nissan Japan asserts there is no agency relationship and points primarily to Article 4 of the "Sole Distributor Agreement" between Nissan Japan and Nissan North America. Article 4 of that agreement explicitly states that Nissan North America is not the agent of Nissan Japan. While "[t]he label the parties attach to their relationship is informative [it is] not dispositive." *Kerl,* 273 Wis. 2d 106, ¶ 44.

[27] Rasmussen also contends that, for the purposes of ch. 801, Wis. Stat. § 801.03(1) defines "defendant" as "the person named as defendant in a civil action, and where in this chapter acts of the defendant are referred to, the reference attributes to the defendant any person's acts for which acts the defendant is legally responsible." Rasmussen then contends that because Wis. Stat. § 801.05(1)(d) accords general personal jurisdiction over any defendant who "is engaged in substantial and not isolated activities" in Wisconsin, those "activities" encompass the "acts" of Nissan Japan who is a defendant. Rasmussen contends that by referring to the "acts" of Nissan Japan, § 801.05(1)(d) attributes to Nissan Japan any acts of its agents, *i.e.,* those for whom it is legally responsible. However, all of this begs the question of whether Nissan Japan is legally responsible

20

¶ 29. In a jurisdictional analysis under Wisconsin's long-arm statute, we generally consider the quantity of contacts; the nature and quality of the contacts; the source and connection of the cause of action with those contacts; the interests of Wisconsin in the action; and the convenience to the parties of employing a Wisconsin forum. *Clement,* 87 Wis. 2d 334–35; Vt. Yogurt, 107 Wis. 2d at 608.

¶ 30. However, here, there is no dispute that Nissan North America has had contacts with Wisconsin that are sufficient to afford general personal jurisdiction over Nissan North America. Rather, the question presented is whether the relationship between Nissan Japan and Nissan North America is such that Nissan North America's substantial and not isolated activities within Wisconsin should be imputed to Nissan Japan. Therefore, much of our discussion is focused on the relationship between the two corporations and how that impacts on the question of general personal jurisdiction.

¶ 31. We begin by underscoring that Rasmussen is seeking general personal jurisdiction over Nissan Japan. We have never grounded general personal jurisdiction of a corporation in an alleged agency relationship with another corporation. Rasmussen provides no citation to a State of Wisconsin appellate decision that does so.

¶ 32. It is true that in *Pavalon* liability was grounded in an agency relationship, that of a broker and client. However, we accorded only specific personal jurisdiction, *i.e.,* a limited jurisdiction that focuses on specific acts of an agent in a specifically delineated agency relationship. *Pavalon,* 30 Wis. 2d at 235. Specific personal jurisdiction was also accorded in *Kopke.* There, we

for the alleged torts of Nissan North America. The record before us contains nothing to show that it is.

assessed whether a nonresident corporation engaged in conduct of the type described in Wis. Stat. § 801.05(4), which statute provides for specific, not general, personal jurisdiction. *Kopke,* 245 Wis. 2d 396, ¶ 11.

¶ 33. Rasmussen asks us to extend the jurisprudence attendant to specific personal jurisdiction that applies to acts of an alleged agent to general personal jurisdiction based on the acts of an alleged agent. Agency is grounded in the "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Marten Trans., Ltd. v. Hartford Specialty Co.,* 194 Wis. 2d 1, 13–14, 533 N.W.2d 452 (1995) (internal quotation marks omitted). We agree with Rasmussen that a corporation may act through its agents. *State v. Dried Milk Prods. Co-op,* 16 Wis. 2d 357, 361, 114 N.W.2d 412 (1962).

¶ 34. We note that Wis. Stat. § 801.05(4) provides for specific personal jurisdiction based on the acts of an agent so that a Wisconsin forum is not denied when the facts show that a Wisconsin forum should be accorded. *Pavlic v. Woodrum,* 169 Wis. 2d 585, 590–91, 486 N.W.2d 533 (Ct. App. 1992); *Insolia,* 31 F. Supp. 2d at 671. Specific personal jurisdiction is a limited form of personal jurisdiction well tailored to an agency relationship.

¶ 35. However, in order to accord general personal jurisdiction over a nonresident corporate defendant based on an alleged agency relationship, there must be something more than merely an agency relationship. As in other circumstances where general personal jurisdiction is sought for a nonresident defendant based on the acts of another in an alleged agency relationship with a subsidiary, there also must be control by the nonresident parent corporation sufficient to cause us to disregard the

separate corporate identities of the subsidiary and the parent corporations. *See Conservatorship of Prom,* 224 Wis. 2d at 760; *Insolia,* 31 F. Supp. 2d at 669.

¶ 36. Furthermore, Rasmussen has provided us with no reason why we should expand the law that provides a Wisconsin forum under principles applicable to specific personal jurisdiction to also accord a forum based on general personal jurisdiction, and we perceive none. Accordingly, even if we were to assume, *arguendo,* that Nissan North America were the agent of Nissan Japan, we decline to expand Wisconsin law attendant to specific personal jurisdiction such that general personal jurisdiction may rest solely on an alleged agency relationship.

¶ 37. However, as Rasmussen also asserts, we have ascribed actions of another to a corporation when sufficient factors were present to cause us to disregard the corporate existence. *See Clement,* 87 Wis. 2d at 336–37. *Cemetery Services* lists 15 factors, by way of example, that a court may consider in assessing control, as it relates to corporate integrity; however, all factors are not relevant in all cases. *Cemetery Servs.,* 221 Wis. 2d at 826–27.[28]

---

[28] *Cemetery Services, Inc. v. Wisconsin Department of Regulation & Licensing,* 221 Wis. 2d 817, 586 N.W.2d 191 (Ct. App. 1998), suggested the following factors for consideration when a court is asked to assess corporate integrity: (1) whether there is common stock ownership; (2) whether the corporations have overlapping directors and officers; (3) whether the corporations combine their use of corporate offices; (4) whether the capitalization of the subsidiary was sufficient; (5) whether the operations of the subsidiary are financed by the parent; (6) whether the parent has a controlling interest in the subsidiary's stock; (7) whether the parent has use of the subsidiary's property; (8) the extent of inter-corporate loans; (9) whether the parent

¶ 38. As we consider the applicable law and apply it to the facts found, we note that in assessing corporate separateness, Wisconsin courts have focused most directly on the amount of control that one corporation exercises or has the right to exercise over the other; whether both corporations employ independent decision-making; whether corporate formalities were observed; whether the corporations operated as one corporation; and whether observing the corporate separateness would facilitate fraud. *See Consumer's Co-op,* 142 Wis. 2d at 483–84; *Clement,* 87 Wis. 2d at 336–37; *Conservatorship of Prom,* 224 Wis. 2d at 760.

¶ 39. Here, the circuit court found no factor that would weigh in favor of ignoring the separate corporate identities of Nissan Japan and Nissan North America. To the contrary, the circuit court found that: (1) Nissan Japan did not have "complete control" or "domination" of Nissan North America; (2) requisite corporate formalities were observed; (3) there was no showing that Nissan North America did not exercise independent decision-making; (4) there was no showing that corporate legal requirements were not followed; and (5) there was no showing of fraud or undercapitalization. These findings have not been challenged, and in addition, our examination of the record shows that they are not clearly erroneous.

---

was the incorporator of the subsidiary; (10) whether the parent files consolidated tax returns; (11) whether the subsidiary exercises independent decision-making; (12) whether the directors of the subsidiary exercise independent decision-making; (13) whether formal corporate legal requirements are observed; (14) whether there are contracts between the subsidiary and parent; and (15) whether the observance of corporate integrity will result in fraud or injustice to third-parties. *Id.* at 826–27.

¶ 40. Given the law, which presumes corporate separateness, and the facts found about the relationship between Nissan Japan and Nissan North America, we conclude that Nissan Japan did not have control over Nissan North America sufficient to cause us to disregard the separate corporate identities of the nonresident parent and the subsidiary such that we impute the acts of the subsidiary to the parent. The reasoning of *Insolia* is consistent with our conclusion.

¶ 41. The issue in *Insolia* was whether Wisconsin had general personal jurisdiction over a nonresident parent corporation based on the Wisconsin activities of its subsidiary. In order to make the required determination, the court examined the degree to which the two corporations actually were separate entities. In that regard, the court noted that while "[c]ourts begin with the presumption of corporate separateness":

> courts confronted with this issue . . . have focused on an additional factor: whether the parent managed the subsidiary with a degree of control greater than that normally associated with common ownership and directorship. This factor is borrowed from the so-called "alter-ego" doctrine, applicable to shareholders who exert "not mere majority or complete stock control, but complete domination . . . so that the corporate entity [has] . . . no . . . separate existence of its own."

*Insolia,* 31 F. Supp. 2d at 669 (quoting *Consumer's Co-op,* 142 Wis. 2d at 484) (other internal citations and quotation omitted; alterations in original). The court in *Insolia* concluded that while " '[p]arents of wholly owned subsidiaries necessarily control, direct and supervise the subsidiaries to some extent' . . . anything less than the degree of control necessary to pierce the parent corporation's veil of liability is insufficient to establish personal jurisdiction over the parent." *Id.*

(quoting *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 540 (7th Cir. 1998)). *Insolia* ultimately concluded that the nonresident parent was not the alter ego of the subsidiary and that there was no basis for disregarding the corporate integrity of the subsidiary; therefore, there was no basis on which to accord general personal jurisdiction over the nonresident parent corporation. *Id.*

¶ 42. Here too, the facts found by the circuit court demonstrate the corporate integrity of Nissan North America has not been overridden by Nissan Japan's control of its subsidiary.

¶ 43. The reasoning in *Conservatorship of Prom,* which addressed under what factual scenario service of process on the Secretary of State is sufficient to accord personal jurisdiction over a nonresident corporation, is also helpful when examining corporate separateness. *Conservatorship of Prom,* 224 Wis. 2d at 752. The court's reasoning is consistent with the reasoning of *Insolia.* In *Conservatorship of Prom,* the court held that in order to employ service on the Secretary of State as service on the nonresident defendant based on the activities of the subsidiary, it was necessary that the record establish that the nonresident parent corporation "controls its subsidiary to such an extent that the separate corporate identity of the subsidiary should be disregarded." *Id.* at 760. The mere presence of a subsidiary that conducts business in Wisconsin was insufficient. *Id.* In deciding whether facts sufficient to disregard the corporate identity of the subsidiary had been established, the court considered the 15 factors set out in *Cemetery Services. Id.* at 760–61.

¶ 44. Accordingly, based on the facts found, the law applicable and the reasoning we have held to be persuasive, we conclude that Rasmussen has not met

26

his burden of showing a basis for disregarding the corporate integrity of Nissan North America. He has provided no evidence of control by Nissan Japan sufficient to cause us to disregard the separate corporate identities of the subsidiary and parent. There is no evidence that Nissan Japan and Nissan North America were not operated as separate and independent corporations; no evidence that Nissan North America did not independently decide how to operate; and no evidence of fraud or undercapitalization. In sum, Rasmussen has not shown that the activities of Nissan North America can be imputed to Nissan Japan. Without the attribution of Nissan North America's activities in Wisconsin to Nissan Japan, Rasmussen has provided no basis to demonstrate the "substantial and not isolated activities" within Wisconsin that Wis. Stat. § 801.05(1)(d) requires for general personal jurisdiction over Nissan Japan. Accordingly, we conclude that Nissan Japan was properly dismissed for lack of personal jurisdiction.

¶ 45. Rasmussen cites *Huck v. Chicago, St. Paul, Minneapolis & Omaha Railway Co.*, 4 Wis. 2d 132, 90 N.W.2d 154 (1958) and *Lau v. Chicago & North Western Railway Co.*, 14 Wis. 2d 329, 111 N.W.2d 158 (1961), as decisions that support his position. Neither case is helpful to Rasmussen's cause.

¶ 46. In *Huck,* the issue was whether Wisconsin had jurisdiction over a nonresident defendant under the "doing business" general personal jurisdiction statute in place at the time.[29] *Huck,* 4 Wis. 2d at 135. There, we held that even though the nonresident corporation's

---

[29] The statute that was repealed in 1975 stated that Wisconsin courts had jurisdiction over a foreign corporation if it "is doing business in Wisconsin at the time of service." *Huck v. Chi., St. Paul, Minneapolis & Omaha Ry. Co.*, 4 Wis. 2d 132, 135, 90 N.W.2d 154 (1958) (citing Wis. Stat. § 262.09(4) (1957)).

only activity in the state was solicitation, the solicitation included maintaining an office in Milwaukee to facilitate its activities that were "substantial and extensive" enough to subject the corporation to jurisdiction of Wisconsin courts. *Id.* at 139–41.

¶ 47. Similarly, in *Lau,* we concluded that under the same statute at issue in *Huck,* there was general personal jurisdiction over a Missouri corporation based on the solicitation activities of its employees in Wisconsin and the Milwaukee office it maintained. *Lau,* 14 Wis. 2d at 331–32. Neither *Huck* nor *Lau* considered whether there was jurisdiction over a corporation based on the actions of its subsidiary. Rather, as Nissan Japan points out, *Huck* and *Lau* "stand for the unremarkable proposition that, when corporations maintain offices in Wisconsin, have employees who permanently staff those offices in Wisconsin, and regularly solicit business in Wisconsin, they are subject to general [personal] jurisdiction."

¶ 48. Rasmussen also points us to *Clement.* In *Clement,* we held that Wisconsin had general personal jurisdiction over the United Cerebral Palsy Association (United Cerebral Palsy), a New York non-profit corporation. The plaintiff brought a breach of employment contract claim against United Cerebral Palsy and United Cerebral Palsy of Southeastern Wisconsin, Inc. (Wisconsin Cerebral Palsy), a Wisconsin non-profit, when Wisconsin Cerebral Palsy found itself without adequate funds to pay plaintiff's salary. *Clement,* 87 Wis. 2d at 330. Prior to the contract dispute, United Cerebral Palsy loaned Wisconsin Cerebral Palsy $13,000 on the condition that a controlling number of United Cerebral Palsy representatives would be placed on the Wisconsin Cerebral Palsy board of directors. *Id.* at 329. Consequently, our conclusion that there was

general personal jurisdiction over United Cerebral Palsy was based in large part on the amount of control the circuit court found that the United Cerebral Palsy had over Wisconsin Cerebral Palsy. *Id.* at 336. For example, the trial court found that United Cerebral Palsy used its controlling vote on the board to overrule previous decisions made by Wisconsin Cerebral Palsy. *Id.* at 337.

¶ 49. Control sufficient to cause a court to disregard separate corporate identities is the sine qua non of the alter-ego theory for piercing the corporate veil.[30] And, while the alter-ego theory of personal jurisdiction was not mentioned in *Clement,* the amount of control exercised by United Cerebral Palsy over Wisconsin Cerebral Palsy mirrors the control parent corporations have over subsidiaries in cases where courts have disregarded the separateness of corporate identities.[31]

■

¶ 50. We are not persuaded that the decisions Rasmussen cited should lead us to the conclusion he seeks. Accordingly, we conclude that Rasmussen has provided no factual or legal predicates for disregarding the separate corporate identities of Nissan Japan and Nissan North America. Therefore, Nissan Japan is not

---

[30] As we mentioned above in paragraph 25, piercing the corporate veil is generally associated with attaching liability for corporate actions to someone other than the corporation. However, the analysis of control employed therein is similar to that employed in assessing the issue of control when general personal jurisdiction is at issue. *Insolia v. Philip Morris Inc.,* 31 F. Supp. 2d 660, 669 (W.D. Wis. 1998).

[31] *See Consumer's Co-op of Walworth Cnty. v. Olsen,* 142 Wis. 2d 465, 484, 419 N.W.2d 211 (1988); *see also Piercing the Corporate Law Veil: The Alter Ego Doctrine under Federal Common Law,* 95 Harv. L. Rev. 853, 866–67 (Feb. 1982).

subject to general personal jurisdiction based on the substantial and not isolated activities of Nissan North America.

## III. CONCLUSION

¶ 51. We conclude that even assuming *arguendo* that Nissan North America were the agent of Nissan Japan, absent control by Nissan Japan sufficient to cause us to disregard the separate corporate identities of Nissan Japan and Nissan North America, the activities of the subsidiary corporation are insufficient to subject its nonresident parent corporation to general personal jurisdiction under Wis. Stat. § 801.05(1)(d). We also conclude that Rasmussen has not met his burden to show that the corporate separateness of Nissan Japan and Nissan North America should be disregarded such that the activities of Nissan North America in Wisconsin should be imputed to Nissan Japan. Accordingly, the statutory prerequisites for general personal jurisdiction under § 801.05(1)(d) have not been met.

¶ 52. Because we conclude that the statutory requirements for general personal jurisdiction have not been met, we need not discuss whether exercising general personal jurisdiction over Nissan Japan comports with due process. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 53. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). General personal jurisdiction over a parent corporation "is an important and controversial area that

lies at the intersection of civil procedure and corporate law."[1]

¶ 54. I write separately to put the issue of general personal jurisdiction over a parent corporation in context, to explore the complicated nature of the issue presented, and to raise concern about the majority opinion's references to "agency."

¶ 55. The issue presented is the circuit court's general personal jurisdiction over a parent corporation for the continuous and substantial acts of its wholly owned subsidiary corporation in Wisconsin.[2] The instant case adds a twenty-first century global twist because the parent corporation is a private multinational corporation.[3]

¶ 56. The instant case raises a question of jurisdiction over the parent corporation, not the liability of the parent for the conduct of the subsidiary. In other words, the case does not concern substantive rights against the parent corporation.[4]

---

[1] Jennifer A. Schwartz, *Piercing the Corporate Veil of an Alien Parent for Jurisdictional Purposes: A Proposal for a Standard that Comports with* Due Process, 96 Cal. L. Rev. 731, 732 (2008).

[2] *See* Wis. Stat. § 801.05(1)(d).

[3] The development of multinational private enterprises raises a conflict between the power of the enterprise and the power of any nation over the enterprise. In the United States the development of multinational enterprises raises a conflict between the power of the enterprise, the power of each individual state of the union, and the power of federal courts. Schwartz, *supra* note 1, at 731–32; Yitzhak Hadari, *The Structure of the Private Multinational Enterprise,* 71 Mich. L. Rev. 729 (1973).

[4] Henry W. Ballantine, *Separate Entity of Parent and Subsidiary Corporations,* 14 Calif. L. Rev. 12 (1925–26).

31

¶ 57. To establish that a Wisconsin circuit court has general personal jurisdiction over a defendant, including a parent corporation, two criteria must be met: jurisdiction must be authorized by the Wisconsin long-arm statute[5] and the exercise of jurisdiction must not violate the parent corporation's constitutional due process rights.[6] The Wisconsin long-arm statute authorizes jurisdiction to the extent allowed by federal constitutional due process.[7] Therefore, the only analysis that need be done is a due process analysis.

¶ 58. The essence of the analysis of general personal jurisdiction over a corporation is whether the corporation has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "[8]

¶ 59. In the present case, there is no dispute that general personal jurisdiction lies over Nissan Japan's wholly owned subsidiary corporation, Nissan North

---

Phillip I. Blumberg, *The Law of Corporate Groups: Procedural Problems in the Law of Parent and Subsidiary Corporations* (1983 & Supp. 2000), addresses the law of parent and subsidiary corporations in the area of procedure; concern with substantive liability and limited liability is rarely involved.

[5] Wis. Stat. § 801.05(1)(d).

[6] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 311, 320 (1945). *See Kopke v. A. Hartrodt S.R.L.,* 245 Wis. 2d 396, 408–09, 629 N.W.2d 662 (2001) (two-part inquiry); *Clement v. United Cerebral Palsy of S.E. Wis., Inc.,* 87 Wis. 2d 327, 334–35, 274 N.W.2d 688 (1979) (due process analysis of jurisdiction over foreign non-profit corporation for conduct of local affiliate).

[7] *Schroeder v. Raich,* 89 Wis. 2d 588, 593, 278 N.W.2d 871 (1979).

[8] *Int'l Shoe,* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

America; Nissan North America has substantial, systematic, and continuous contacts in Wisconsin. It is further undisputed that the parent corporation, Nissan Japan, does not in and of itself have minimum contacts in Wisconsin for a Wisconsin court to invoke general personal jurisdiction over it. For general personal jurisdiction over the parent, a court's focus is on the activities of the parent in relation to the subsidiary so that the actions of the subsidiary in the forum can be understood as constituting the parent's presence in the forum. A court examines whether the parent's contacts establish general personal jurisdiction over the parent under the pertinent general personal jurisdictional principles (a long-arm statute and constitutional principles of fairness).

¶ 60. The issue of a trial court's general personal jurisdiction over a parent corporation on the basis of the conduct of a subsidiary has been and continues to be the subject of numerous cases in federal and state courts at least since 1925, when the United States Supreme Court decided *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333 (1925).[9]

¶ 61. In *Cannon,* a complainant attempted to establish jurisdiction in North Carolina over a Maine corporation on the basis of the activities of a wholly

[9] For discussions and compilations of cases addressing this issue, see Blumberg, *supra* note 4; Robert C. Casad & William B. Richman, *Jurisdiction in Civil Actions* § 4–3[5], at 496–98 (3d ed. 2004); 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 43.70, at 323–34 (2006 rev. ed.); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002); Schwartz, *supra* note 1; Lonny Sheinkopf Hoffman, *The Case Against Vicarious Jurisdiction,* 152 U. Pa. L. Rev. 1023 (2003–04); William A. Voxman, *Jurisdiction Over a Parent Corporation in Its Subsidiary's State of Incorporation,* 141 U. Pa. L. Rev. 327, 330–31, 337 (1992).

owned subsidiary corporation in North Carolina. Justice Brandeis, writing a brief, four-page opinion for the United States Supreme Court, took a formalistic approach, concluding that the North Carolina court could not assert jurisdiction as long as the subsidiary corporation had remained a "distinct corporate entity. . . . The corporate separation, though perhaps merely formal, was real."[10] The exact basis of the *Cannon* holding has been disputed, namely whether it is based on the federal constitution,[11] on federal common law,[12] on the absence of statutory authorization,[13] or on some natural law concept of the attributes of a corporation.[14]

¶ 62. The case law (as well as academic commentary) is not consistent in the interpretation or application of *Cannon*. Some cases refuse to attribute the activities of the subsidiary corporation to a parent corporation as long as the corporation has followed the formal requirements mandated by state law.[15] Other

---

[10] *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335, 337 (1925).

[11] At that time the constitutional basis for jurisdiction was presence. *Pennoyer v. Neff,* 95 U.S. 714 (1877).

[12] The federal common law for diversity jurisdiction analysis was abolished by *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938).

[13] Wisconsin has a long-arm statute.

[14] Daniel G. Brown, *Jurisdiction Over A Corporation on the Basis of the Contacts of an Affiliated Corporation: Do You Have To Pierce the Corporate Veil?,* 61 U. Cin. L. Rev. 595, 602 (1992–93); Lea Brilmayer & Kathleen Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency,* 74 Calif. L. Rev. 1, 3 (1986).

[15] *See, e.g.,* Hoffman, *supra* note 9, at 1042 (discussing disagreement about holding of *Cannon*); Voxman, *supra* note 9, at 330–31, 337 (1992).

cases do not adhere to the strict formalistic approach in *Cannon* and view *Cannon* as authorizing the examination of the nature of the relationship between the two corporations to determine whether the exercise of jurisdiction is warranted.[16]

¶ 63. Still other cases have questioned the continued validity of the *Cannon* case after *International Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945), and view *International Shoe* as altering or eroding the jurisdictional test of *Cannon.* Some of these cases conclude that the only due process limitations on the exercise of state court jurisdiction are the minimum contacts with the state and fairness standards of *International Shoe.*[17]

¶ 64. Regardless of whether a court uses the *Cannon* or *International Shoe* approach, an analysis of general personal jurisdiction over a parent corporation begins with the deeply rooted principle of law that a corporation is a separate juridical entity. A corporation is a legal entity distinct from its shareholders and employees. Corporations are legal fictions, granting limited liability to the owners of the corporation. Although a legal fiction, a corporation is also a legal fact. Thus, ordinarily a shareholder, including a parent corporation as a shareholder, is not subject to the jurisdiction of a court on the basis of the activities of the corporation. Jurisdiction over a wholly owned subsidiary does not automatically establish jurisdiction over

[16] *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir. 1983) (the degree of control by the parent must be greater than that normally associated with common ownership and directorship); Voxman, *supra* note 9, at 337–39 (1992).

[17] *See, e.g., Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F. Supp. 483 (D. Kan. 1978); Voxman, *supra* note 9, at 331–36, (1992).

35

the parent corporation in any forum in which the subsidiary has continuous and substantial contacts.[18]

¶ 65. Courts and commentators (as well as the parties and the amici in the present case, and the majority opinion) have articulated and purport to apply numerous tests to impute jurisdiction over the parent corporation based upon the acts of the subsidiary: the subsidiary is the parent's alter ego,[19] agent,[20] adjunct,[21] creature, dummy, tool, mere department,[22] or instrumentality;[23] the corporate veil should be "pierced";[24] the

[18] Hadari, *supra* note 3, at 770–71.

[19] For discussions of the alter ego theory of jurisdiction and case law, see *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, ___, 2011 WL 1879210 (9th Cir. May 18, 2011); Casad & Richman, *supra* note 9, § 4–3[5], at 496–98; Schwartz, *supra* note 1, at 746–48; Voxman, *supra* note 9, at 348.

[20] For discussions of the agency theory of general personal jurisdiction, see *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, ___, 2011 WL 1879210 (9th Cir. May 18, 2011); *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 653 (Tenn. 2009) (jurisdiction may exist when there is an agency relationship between a parent and subsidiary); Casad & Richman, *supra* note 9, § 4–3[5], at 498–501; 4A Wright & Miller, *supra* note 9, § 1069.4.

[21] *See, e.g., In re Genetically Modified Rice Litigation,* 576 F. Supp. 2d 1063, 1072 (E.D. Mo. 2008).

[22] *See, e.g., Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Co.,* 751 F.2d 117 (2d Cir. 1984).

[23] *See generally Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 n.2 (10th Cir. 1993) (describing agency test, alter ego test, instrumentality test and entity test, tests courts developed to determine substantive liability to determine jurisdiction); *Gordon,* 300 S.W.3d at 652 n.14.

[24] For a discussion of the "piercing the corporate veil" theory of jurisdiction and case law, see generally Casad & Richman, *supra* note 9, § 4–3[5], at 496–98; Schwartz, *supra* note 1, at 746–48.

parent exercises a high degree of day-to-day control over the subsidiary notwithstanding formal corporate separateness;[25] and the enterprise theory based on economic integration of parent and subsidiary.[26]

¶ 66. Several of these "tests" are borrowed from substantive fields of law such as contract and tort liability. The meaning of these tests in substantive law cases might be different from the meaning of these tests in general personal jurisdiction cases.[27]

¶ 67. Thus, the circuit court and the majority opinion tread in murky waters when they use indeterminate substantive legal tests, such as piercing the

---

[25] Factors used to determine the extent of the parent's control include: whether a parent arranges financing for and capitalization of a subsidiary; whether the corporations keep separate books, tax returns, and financial statements; whether the officers ad directors are the same; whether the parent holds its subsidiary as an agent; the method of payment made to the parent by the subsidiary; and the extent of control over the daily affairs of the subsidiary. Courts are generally more likely to assert jurisdiction when the subsidiary is undercapitalized or the complainant would suffer injustice absent personal jurisdiction over the foreign parent. Schwartz, *supra* note 1, at 748–49.

[26] For discussions of the enterprise theory examining the corporate group as a unit, see Blumberg, *supra* note 4, § 1.03, at 23–25; Schwartz, *supra* note 1, at 735; Brilmayer & Paisley, *supra* note 14, at 30.

[27] Commentators and courts explain that the justifications for holding or not holding a parent corporation substantively liable for the acts of a subsidiary may be different than the justifications for exercising general personal jurisdiction over the parent. *See, e.g.,* 1 Fletcher, *supra* note 9, § 43.70 at 326–27. Furthermore, commentators argue that if the same standard is used for jurisdictional and substantive law issues, then the jurisdictional ruling may be used as collateral estoppel, preventing the parties from relitigating the issue in the determination of liability. *See, e.g.,* Brown, *supra* note 14, at 621.

37

corporate veil, to determine whether general personal jurisdiction lies. Tying the jurisdictional test to a substantive legal test such as piercing the corporate veil seems "to allow consideration of a wide and freewheeling variety of veil-piercing factors for jurisdictional purposes, divorced from any meaningful appraisal of the defendant's conduct in relation to the litigation and the forum."[28] "The standards by which we measure whether to pierce the corporate veil tell us nothing about the various interests that must be balanced in the constitutional evaluation of judicial jurisdiction."[29]

¶ 68. Using an analysis based upon the extent of control to determine whether the parent company has sufficient contacts with the forum state (through the control of the subsidiaries actions in the state), as opposed to determining whether the corporate entities should be merged or the corporate veil pierced, moors the jurisdictional analysis to jurisdictional principles and avoids the potentially confusing interplay of using a substantive legal test for jurisdictional analyses.

¶ 69. Although the various "tests," often borrowed from the substantive law, at base may function to determine the extent of control of the parent, what must not be lost in using these "tests" for jurisdictional

[28] *Hoffman, supra* note 9, at 1094.

[29] *Id.* at 1085. *See also* Blumberg, *supra* note 4, 2000 Supp. at xii-xiii ("[F]ruitful analysis of such procedural questions relating to such constituent corporations most advantageously starts with an articulation of the objectives and policies of the doctrine in question. It then inquires whether these particular objectives and policies are better implemented by treating the constituents of the group for the purpose at hand as a single enterprise or by treating each of them as a separate and distinct entity with its legal responsibilities entirely unaffected by its role as part of an integrated business.").

purposes is that they are being applied to determine whether jurisdictional principles (minimum contacts, fair play, and substantial justice) are met, not whether substantive law principles are met. The majority opinion relies on the tests developed in substantive law cases and does not acknowledge that the tests for substantive and jurisdictional law are not necessarily one and the same.

¶ 70. Furthermore, the majority opinion relies on tests, such as "piercing the corporate veil," that are considered worn and meaningless epithets and metaphors.[30] Justice Benjamin Cardozo (then Judge of the New York Court of Appeals) warned in 1926 against using worn epithets and metaphors as a substitute for rigorous analysis as follows:

> The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor. Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it.

[30] "When the haze of jurisdictional law collides with the metaphor-filled fog of the 'piercing the corporate veil' doctrine, the result is, predictably, a smog of the thickest variety. . . . Few areas of the law are as clouded by the use of metaphors in place of substantive legal analysis as is the area of piercing the corporate veil." Brown, *supra* note 14, at 595, 598.

The doctrine of piercing the corporate veil has been analogized to lightning: "rare, severe, and unprincipled." Frank H. Easterbrook & Daniel R. Fischel, *Limited Liability and the Corporation,* 52 U. Chi. L. Rev. 89, 89 (1985).

Piercing the corporate veil "has been derisively called many things: 'unprincipled,' 'defy[ing] any attempt at rational explanation,' 'not entirely comprehensible,' 'dysfunctional,' and 'freakish[].'" Hoffman, *supra* note 9, at 1075 (internal citations omitted).

*Berkey v. Third Ave. Ry. Co.,* 155 N.E. 58, 61 (1926) (a substantive tort-liability case).

¶ 71. The rationale for the exercise of jurisdiction over the parent corporation, regardless of the name given the test, is that the parent exercises "such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.' "[31] The focus should be on the control of the parent over the subsidiary as it relates to the minimum contacts necessary to establish jurisdiction over the parent under the pertinent general personal jurisdictional principles (a long-arm statute and constitutional principles of fairness).

¶ 72. Evidence of parental control over the day-to-day operations of the subsidiary's contacts in the forum would rightly be considered a relevant fact in determining whether the parent corporation has sufficient minimum contacts with the forum. If a parent controls the acts of a subsidiary in the state, then the parent ostensibly acts in the state, and the state has an interest in exercising jurisdiction over the parent corporation.

¶ 73. In other words, when the parent corporation's control over the subsidiary in the forum state is such that the entities should be treated as one and the same for purposes of exercising general personal jurisdiction over the parent, the subsidiary's forum contacts are treated as the parent's forum contacts. The Restatement (Second) of Conflicts of Laws states the rule as follows:

[31] *Hargrave,* 710 F.2d at 1159 (quoting 2 James Wm. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 4.25[6], at 4–273 (2d ed. 1982).

40

Judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation. This is true even though the parent owns all of the subsidiary's stock. So a state does not have judicial jurisdiction over a parent corporation merely because a subsidiary of the parent does business within its territory.

. . . .

Judicial jurisdiction over a subsidiary corporation will [] give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence.

Restatement (Second) of Conflicts of Laws § 52, cmt. b (1971).

¶ 74. I write to stress that no one has formulated a mechanical rule that furnishes a certain jurisdictional test. "Because every corporate relationship may differ significantly from every other corporate relationship, generalizations about the characteristics that will or will not indicate the existence of the requisite lack of separateness or the existence of sufficient control are almost impossible to draw."[32]

¶ 75. To disregard corporate separateness and assert general personal jurisdiction over the parent corporation on the basis of the activities of the subsidiary in the forum, all that can be stated is that a court must closely examine the nature and character of the relationship between the parent and subsidiary corporations, the nature of the forum contacts of the subsidiary, and the degree of control exercised by the parent

---

[32] Casad & Richman, *supra* note 9, § 3–2(b)(ix), at 359.

over the subsidiary in relation to those forum contacts.[33] A court's inquiry is necessarily fact dependent.[34]

¶ 76. This analysis, in contrast with the use of the various substantive legal "tests" often used by the courts, begins and ends with the appropriate question: Does the extent and continuity of what the parent corporation has done in the forum state make it reasonable to bring that parent corporation before a court in the forum?

¶ 77. The circuit court in the present case discussed numerous tests and theories, recognizing numerous approaches and expressing frustration that it was uncertain about the appropriate test. It expressed the confusion surrounding the analysis of general personal jurisdiction as follows: "There is a significant issue as to whether or not the activities of the United States subsidiaries should be imputed to either parent. This seems to be an area where we really allowed the jurisdictional issue to become extremely complex."

¶ 78. After examining and applying various approaches, the circuit court analyzed the parent corporation's control over the subsidiary in the present case. Although using the language of "piercing the corporate veil," the circuit court concluded that the facts do not demonstrate pervasive, day-to-day, or dominating control by Nissan Japan over the subsidiary in Wisconsin. The circuit court opined that "there has clearly been a failure to demonstrate the corporate veil ought to be pierced or that on any other theory, jurisdiction over Nissan Japan could be obtained because the subsidiary was simply a tool or an extension of the parent." The record supports the circuit court's findings of fact about

---

[33] *See, e.g.,* 1 Fletcher, *supra* note 9, § 43.70, at 323.

[34] 4A Wright & Miller, *supra* note 9, § 1069.4, at 164, 185.

Nissan Japan's lack of pervasive control over the subsidiary in Wisconsin. I therefore concur in the mandate.

¶ 79. I should be able to end this concurrence at this point. I cannot do so, however, because I have not yet analyzed the point of dispute between the parties in this court and their main arguments.

¶ 80. The parties debate the significance of an agency relationship between a parent and subsidiary corporation in determining general personal jurisdiction over the parent corporation.

¶ 81. The plaintiff argues that the subsidiary in the present case is the agent of the parent corporation and that therefore the circuit court has jurisdiction over the parent corporation based on the Wisconsin contacts of the subsidiary corporation. The plaintiff's assertion, while not stated as such, at base suggests that all of the wholly owned subsidiary's contacts in Wisconsin are in furtherance of the agency relationship between the subsidiary and the parent corporation in the present case, and so all Wisconsin contacts of the subsidiary are attributable to the parent corporation.

¶ 82. The defendant parent corporation, Nissan Japan, argues that the forum contacts of a subsidiary cannot be imputed to a parent corporation based solely on the existence of a purported principal-agent relationship between a parent corporation and a wholly owned subsidiary.

¶ 83. Thus the parties debate whether an agency relationship between the two corporations will give the forum general personal jurisdiction over the parent corporation. The majority addresses the parties' dispute by "assuming *arguendo* that Nissan North America were the agent of Nissan Japan." Majority op., ¶ 2.

¶ 84. To address the parties' dispute, I have to begin by explaining that the word "agent" can have

43

more than one legal meaning; the word is not self-explanatory.[35] "Agency encompasses a wide and diverse range of relationships and circumstances."[36] The concept of agency in the broadest sense includes every relationship in which one person or entity acts for or represents another.[37]

¶ 85. A corporation can act only through another, either through an individual or through another corporation (which in turn acts through an individual or a corporation). Under general legal principles, a corporate subsidiary, even a wholly owned subsidiary, is not automatically an agent of a parent corporation.[38]

¶ 86. Agency hinges on a principal's right to control the actions of the agent.[39] "A principal's right to control the agent is a constant across relationships of agency, but the content or specific meaning of the right

---

[35] *Doe v. Holy See,* 557 F.3d 1066, 1080 (9th Cir. 2009) ("[T]he standard for determining that a natural person is the agent of another differs from the standard for attribution of the actions of a corporation to another entity.").

[36] Restatement (Third) of Agency § 1.01 cmt. c, at 19 (2006).

[37] *See, e.g., Gordon,* 300 S.W.3d at 653; *St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Assoc./Mich. Educ. Ass'n,* 581 N.W.2d 707, 716 (Mich. 1998).

[38] See cases cited at Reporter's Note, Restatement (Third) of Agency § 1.01, at 45–46 (2006); Blumberg, *supra* note 4, § 1.02.2 at 21–23 (traditional agency almost always does not exist between a parent corporation and a subsidiary; the word "agency" is often misused in jurisdiction cases and linked with other metaphors, like alter ego or piercing the corporate veil that establish a common legal identity).

Despite an agency relationship, a principal and agent retain separate legal personalities. Restatement (Third) of Agency § 1.01 cmt. c, at 20 (2006).

[39] Restatement (Third) of Agency § 1.01 cmt. c, at 20 (2006).

varies."[40] "The fact that the substantive law may make the defendant vicariously liable for the act of someone else does not necessarily mean that the one who acted was the agent of the defendant for long-arm jurisdiction purposes."[41] To assert general personal jurisdiction over a parent corporation based on the forum contacts of a subsidiary, the complainant must demonstrate that the parent corporation exerts significant control over the actions of the subsidiary.[42] Evidence of a parent corporation's significant control over the forum contacts of the subsidiary, not the indeterminacy of labeling a wholly owned subsidiary an agent of the parent corporation, is determinative of imputing the forum contacts of the subsidiary to the parent corporation for purposes of general personal jurisdiction.

\* \* \* \*

¶ 87. In sum, I write separately to highlight that the analysis for imputing the contacts of a wholly owned subsidiary to a parent corporation for purposes of general personal jurisdiction is not necessarily the same as the analysis for a corporate parent's substantive liability for the acts of its wholly owned subsidiary.

¶ 88. The majority opinion recognizes the distinction between jurisdiction and substantive liability. But in discussing jurisdictional concepts, the majority opin-

[40] *Id.*

[41] Casad & Richman, *supra* note 9, § 4–3[5], at 479 ("The agency question for [jurisdictional] basis purposes is distinct from the agency question for process purposes, and both are distinct from the question of alter ego or piercing the corporate veil, although the distinctions often are blurred in the cases." *Id.* at 496.).

[42] *Coca-Cola Co. v. Proctor & Gamble Co.*, 595 F. Supp. 304, 306 (N.D. Ga. 1983); Voxman, *supra* note 9, at 341 (1992).

45

ion references principles that are applicable to substantive analyses without making a distinction in applying those principles to the jurisdictional analysis. These references in the majority opinion are, in my opinion, potentially confusing. The analysis of general personal jurisdiction and the analysis of substantive liability in situations involving a wholly owned subsidiary and its parent should not be confused as being one and the same.

¶ 89. No one has formulated a mechanical rule that furnishes a certain general personal jurisdictional test in the parent and subsidiary context. The essence of the answer to the question whether general personal jurisdiction over a parent corporation lies because of the forum contacts of its subsidiary is the degree of control of the parent over the forum contacts of the subsidiary.

¶ 90. For the reasons set forth, I write separately.