SUB-ZERO FREEZER COMPANY, INC., Plaintiff-Respondent,

v.

R.J. CLARKSON COMPANY, INC., Defendant-Appellant.†

Court of Appeals

*No. 89-2236. Submitted on briefs June 7, 1990.—Decided November 15, 1990.*

(Also reported in 464 N.W.2d 52.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant the cause was submitted on the briefs of *Shindell & Bartley,* by *Anne B. Shindell* and *John A. Griner IV,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Foley & Lardner,* by *Thomas G. Ragatz* and *Michael A. Bowen,* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J.   R.J. Clarkson Company, Inc., a South Carolina corporation, appeals from a judgment awarding $98,316.56 to Sub-Zero Freezer Company, Inc., a Wisconsin corporation, on its claim against Clarkson for breach of a settlement agreement. Clarkson argues, on statutory and due process grounds, that Wisconsin courts lack personal jurisdiction over it concerning disputes between it and Sub-Zero. We disagree and affirm.

Wisconsin's long-arm statute, sec. 801.05, Stats., provides in relevant part:

> A court of this state having jurisdiction of the subject matter has jurisdiction over a person . . . under any of the following circumstances:
>
> (1)   In any action whether arising within or without this state, against a defendant who when the action is commenced:
>
> . . ..
> (d)   Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.
>
> . . ..
> (5)   In any action which:
>
> . . ..
> (d)   Relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or direction . . ..

Sub-Zero filed the instant suit in January 1989. Clarkson moved to dismiss on grounds that Wisconsin courts lack personal jurisdiction over it. The trial court held an evidentiary hearing on the issue pursuant to sec. 801.08(1), Stats., and made the following findings of fact:

Sub-Zero manufactures refrigerators and freezers in Madison, Wisconsin. It conducts some of its business through distributors in various parts of the United

States. It receives orders for shipments in Milwaukee and Madison. Clarkson purchased at least 100 units from Sub-Zero between 1974 and 1987, and sold them to retailers. Its purchases from Sub-Zero in the six years preceding 1989 amounted to about $1.6 million.

The two companies did business only by telephone or mail. No Clarkson personnel entered Wisconsin. It placed most of its orders with Sub-Zero's sales representative in the southeast region of the United States. When Clarkson could not reach that representative, it placed orders directly with Sub-Zero's office in Madison. Some ten to twenty percent of the total orders were so placed. Sub-Zero's secretary/treasurer always confirmed the order directly with Clarkson.

In addition to the facts found by the trial court, other facts are undisputed. Clarkson was a distributor of Sub-Zero products, with an exclusive territory. As part of this arrangement, Clarkson participated in a Sub-Zero cooperative advertising program and measured its performance against quotas established by Sub-Zero. Clarkson complained to Sub-Zero about infringements into its territory by other Sub-Zero distributors with the expectation that Sub-Zero would protect it. It is unclear whether their relationship was reduced to a written or oral agreement, or was developed through a course of dealing.

When in 1987 Sub-Zero terminated Clarkson's distributorship, Clarkson refused to pay for certain goods it had received. Clarkson brought suit in South Carolina challenging the termination and Sub-Zero counterclaimed. In 1988, the parties entered the settlement agreement which Sub-Zero now alleges Clarkson breached. The agreement provides that it "shall be governed by" Wisconsin law.

The trial court concluded that it had personal jurisdiction over Clarkson pursuant to Wisconsin's long-arm statute, sec. 801.05(1)(d), Stats. It also concluded that its exercise of that personal jurisdiction did not offend due process considerations.

The trial court properly concluded that the Wisconsin long-arm statute granted it personal jurisdiction, but for the wrong reason. *See State v. Holt,* 128 Wis. 2d 110, 124–25, 382 N.W.2d 679, 687 (Ct. App. 1985) (appellate court may affirm on theory different from trial court's). For the court to have jurisdiction under sec. 801.05(1)(d), Stats., Clarkson must have been "engaged in substantial and not isolated activities within this state" at the time "the action [was] commenced." Clarkson ordered no products from Sub-Zero after 1987. Sub-Zero commenced this action in 1989.

■

We nevertheless conclude that Wisconsin courts have jurisdiction over Clarkson under sec. 801.05(5)(d), Stats., because the instant action "[r]elates to goods . . . shipped from this state by the plaintiff to the defendant on the defendant's order." We reject Clarkson's contention that this action does not relate to "goods" but rather to its settlement agreement with Sub-Zero. The agreement settled claims arising from sales contracts. Those contracts involved goods shipped or to be shipped from Wisconsin and ordered by Clarkson. An action alleging breach of an agreement settling contract disputes concerning goods "relates" to those same goods.

We turn to whether Wisconsin lacks jurisdiction because of constitutional considerations. The due process clause of the fourteenth amendment to the United States Constitution "operates as a limitation on the power of state courts to exercise personal jurisdiction over a nonresident defendant." *State ex rel. N.R.Z. v.*

*G.L.C.,* 152 Wis. 2d 97, 103, 447 N.W.2d 533, 535 (1989) (citing *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 108 (1987)).

> Due process requires that the defendant have certain minimal contacts with the forum state such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice. *Kulko v. California Superior Court,* 436 U.S. 84, 92 (1978), citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). A defendant's minimal contacts with the forum state must have a basis in some act by which the defendant purposefully avails [it]self of the privilege of conducting activities in the state, thus invoking the benefits and protections of its laws. *Asahi,* 480 U.S. at 109, citing *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). An essential criterion in all cases is whether the quality and nature of the defendant's activity is such that it is reasonable and fair to require [it] to conduct [its] defense in the state. *Kulko,* 436 U.S. at 92, citing *International Shoe,* 326 U.S. at 316-17, 319.

*N.R.Z.,* 152 Wis. 2d at 103-04, 447 N.W.2d at 535.

Given the undisputed facts before us, whether Clarkson had sufficient contacts with this state to permit the exercise of personal jurisdiction over Clarkson is a question of law which we decide *de novo. Id.* at 103, 447 N.W.2d at 535. We first consider whether Clarkson had minimum contact with Wisconsin, and then whether it is reasonable and fair for Clarkson to defend in Wisconsin.

Clarkson argues that the purchase of goods from a Wisconsin manufacturer and communications by telephone or mail are insufficient to permit the exercise of personal jurisdiction over it. Clarkson cites two decisions

decided under sec. 801.05(5) for that proposition,[1] neither of which can be relied on because each predates *Burger King v. Rudzewicz,* 471 U.S. 462 (1985):

> [W]here the defendant "deliberately" has engaged in significant activities within a State, Keeton v Hustler Magazine, Inc., [465 U.S. 770, 781 (1984)], or has created "continuing obligations" between himself and residents of the forum, Travelers Health Assn. v Virginia, [339 U.S. 643, 648 (1950)], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
>
> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.

*Id.* at 475–76.

By framing the issue in terms of purchases of goods by mail and telephone, Clarkson understates the extent of its relationship with Sub-Zero. We conclude from the findings by the trial court and the undisputed testimony at the jurisdiction hearing, that Clarkson's distributor-

---

[1]*Jadair, Inc. v. Walt Keeler Co.,* 679 F.2d 131 (7th Cir. 1982) and *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.,* 597 F.2d 596 (7th Cir. 1979).

ship entailed the kind of "continuing obligations" with a Wisconsin resident that create personal jurisdiction under *Burger King.*

An additional aspect of this continuing obligation is the settlement agreement that terminated the South Carolina litigation. The agreement calls for Clarkson to make specified monthly payments to Sub-Zero for eighteen months, and for Sub-Zero to repurchase certain parts it had sold to Clarkson. The agreement provides that the law of Wisconsin governs. The agreement itself is a purposeful act "invoking the benefits and privileges" of Wisconsin law. *N.R.Z.,* 152 Wis. 2d at 104, 447 N.W.2d at 535. It adds to the minimum contacts created by the distributorship. We conclude that Clarkson had sufficient contact with Wisconsin by virtue of the continuing obligations Clarkson entered into with a Wisconsin resident.

We must also consider whether the exercise of jurisdiction is reasonable and fair. *Id.* We conclude it is reasonable and fair for Clarkson to defend in Wisconsin. Clarkson is apparently an established business with substantial resources. The testimony at the hearing showed it is operated by experienced and sophisticated management. It is not a naive individual forced to defend far from home. Clarkson agreed that Wisconsin law would govern the settlement, and could have foreseen that Sub-Zero would seek to use the courts most familiar with applicable law to enforce the agreement.

We conclude that Wisconsin courts have personal jurisdiction over Clarkson concerning its disputes with Sub-Zero, pursuant to sec. 801.05(5)(d), Stats., and exer-

cise of that jurisdiction does not offend due process. We therefore affirm the judgment.

*By the Court.*—Judgment affirmed.