Robert L. DRUSCHEL, Plaintiff-Respondent,

v.

Peter F. CLOEREN, Defendant-Appellant.†

Court of Appeals

*No. 2005AP2575. Submitted on briefs June 5, 2006.
—Decided August 1, 2006.*

2006 WI App 190

(Also reported in 723 N.W.2d 430.)

† Petition to review denied 10/10/06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David J. Sisson, Troy M. Martell* and *Deborah J. Phillips* of *Reinhart Boerner Van Deuren S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Steven R. Cray* of *Wiley Law, S.C.*, Chippewa Falls.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Peter Cloeren appeals a summary judgment awarding Robert Druschel the entire outstanding balance Cloeren owed under a promissory note. Cloeren argues: (1) he is not subject to personal jurisdiction in Wisconsin; and (2) he is entitled to offset the amount of damages caused by Druschel's breaches of his employment and non-compete contracts. We conclude Cloeren is subject to personal jurisdiction in Wisconsin and he is not entitled to offsets for Druschel's alleged contractual breaches. Accordingly, we affirm the judgment.

## BACKGROUND

¶ 2. Cloeren is a Texas resident and majority shareholder of The Cloeren Company, also known as Cloeren, Inc. In 1997, Cloeren and others, on behalf of Cloeren, Inc., sought to purchase a Wisconsin business, Production Components/Chippewa Valley Die, Inc. The

company was owned by Druschel and two other stockholders. Druschel demanded a personal guarantee to complete the sale. Accordingly, Cloeren executed a secured promissory note in his individual capacity for partial payment of Druschel's stock. The note allowed for offsets as outlined in the stock purchase agreement. The sale was completed and the new company was called Production Components-Cloeren, Inc. At the time of the sale, Druschel also entered into two agreements with Production Components, an employment contract and a non-compete agreement.

¶ 3. In February 1998, Cloeren, in his individual capacity, signed a replacement secured promissory note to Druschel. Cloeren made several payments in accordance with the original and replacement notes between September 1997 and September 2002. In June 2003, Druschel notified Cloeren that he would exercise his right to full payment of the replacement note as of September 1, 2003. Cloeren made no payments after September 2002, and Druschel commenced this action in September 2003.

¶ 4. Cloeren moved to dismiss, contending the court lacked personal jurisdiction over him because he did not have sufficient contacts with Wisconsin. The circuit court denied Cloeren's motion, concluding it had jurisdiction by virtue of Wisconsin's long-arm statute, specifically WIS. STAT. § 801.05(1)(d),[1] and that exercising jurisdiction did not violate due process.

¶ 5. The parties filed cross-motions for summary judgment in June 2005. Cloeren contended he was entitled to offsets on the note due to Druschel's violations of the employment contract and non-compete

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

agreement. Druschel contended he was entitled to full payment. The circuit court denied Cloeren's motion and granted Druschel's motion. It concluded that, even if Cloeren were entitled to offsets, he was barred from obtaining them by claim preclusion. The court also concluded that Cloeren's claims were barred because he did not provide appropriate notice of his right to offset. Judgment was entered in Druschel's favor.

## DISCUSSION

### *Personal Jurisdiction*

¶ 6. Cloeren argues he is not subject to personal jurisdiction in Wisconsin. Whether a court has personal jurisdiction presents a question of law that we review independently. *Capitol Fixture & Woodworking Group v. Woodma Distribs., Inc.*, 147 Wis. 2d 157, 160, 432 N.W.2d 647 (Ct. App. 1988). Questions of personal jurisdiction involve a two-step inquiry. *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. First, we examine whether a defendant is subject to jurisdiction under Wisconsin's long-arm statute, WIS. STAT. § 801.05. *Id.* If the statutory requirements are satisfied, we examine whether Wisconsin's exercise of jurisdiction comports with federal due process requirements. *Id.*

A. Wisconsin's Long-Arm Statute

¶ 7. Cloeren argues he is not subject to personal jurisdiction under WIS. STAT. § 801.05(1)(d), which provides personal jurisdiction over a defendant who "[i]s engaged in substantial and not isolated activities within

this state, whether such activities are wholly interstate, intrastate, or otherwise." Generally, a defendant has "substantial and not isolated" contacts with the state if the defendant "solicit[s], create[s], nuture[s], or maintain[s], whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state." *Stauffacher v. Bennett*, 969 F.2d 455, 457 (7th Cir. 1992).

¶ 8. Wisconsin courts consider five factors to determine whether activities are "substantial and not isolated" under WIS. STAT. § 801.05(1)(d): (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source of the contacts and their connection with the cause of action; (4) the interests of the State of Wisconsin; and (5) the convenience of the parties. *Nagel v. Crain Cutter Co.*, 50 Wis. 2d 638, 648–50, 184 N.W.2d 876 (1971).

¶ 9. Cloeren argues the quantity, quality and nature of his contacts with Wisconsin were minimal. He argues that he visited Wisconsin infrequently, that he was barely involved in the purchase of Druschel's stock, and that he did not travel to Wisconsin to negotiate the deal.

¶ 10. Druschel responds that the circuit court's factual findings support its conclusion it has personal jurisdiction. Regarding the quantity, quality and nature of the contacts, the circuit court found:

> 1. [Cloeren] has had six to eight visits to the State of Wisconsin since 1997. Said visits lasted from two to four days at a time;
>
> 2. [Cloeren] had approximately four conversations a week with Douglas Darrow while Douglas Darrow was in the State of Wisconsin. The topics of these conver-

sations were sales, marketing, pending orders, employees, manifold designs for dies, and personal matters;

3. [Cloeren] had approximately two conversations a month with Leigh Darrow while Leigh Darrow was in the State of Wisconsin. The topics of these conversations generally regarded sales of Cloeren products;

4. [Cloeren] is involved in the management and owner of Cloeren, Inc.

5. Cloeren, Inc. is the owner of Production Components-Cloeren, Inc.

6. [Cloeren] is actively involved in the daily operation of Production-Components-Cloeren, Inc. located in the City of Eau Claire, Chippewa County, Wisconsin;

7. [Cloeren] has had continuous and systematic general business contacts with the State of Wisconsin.

These findings demonstrate that Cloeren made a significant number of contacts with Wisconsin, including six to eight personal visits and frequent telephone conversations with Wisconsin residents. Additionally, personal visits are the highest quality of contact. *See Dorf v. Ron March Co.*, 99 F.Supp.2d 994, 997 (E.D. Wis. 2000). "The next highest quality of contact is personal contact of another type." *Id.* Here, Cloeren made frequent personal contact by virtue of telephone calls to Wisconsin. The first and second *Nagel* factors weigh in favor of personal jurisdiction.

¶ 11. On the third *Nagel* factor, Cloeren argues that Druschel's claim has no connection to Cloeren's Wisconsin contacts and that most of his Wisconsin contacts were made after the note was executed. Druschel responds, and we agree, that Cloeren's contacts were the direct result of his personal stake in the business, evidenced by the promissory note he person-

ally signed. The source of the contacts was the purchase and operation of the Wisconsin corporation, including the notes that are the subject of this litigation. Thus, the third *Nagel* factor weighs in favor of jurisdiction.

¶ 12. Regarding the fourth and fifth *Nagel* factors, Cloeren contends Wisconsin has no interest aside from one of its citizens being a party to the action and that Wisconsin is an inconvenient forum for him because it is located thousands of miles from his home state. However, Wisconsin has an interest in protecting its residents from breaches of contract. *See Dorf*, 99 F.Supp.2d at 998. Additionally, as Druschel argues, because the transactions here were largely "paper" transactions, the documentary evidence is equally available in either venue, with the relevant witnesses residing largely in Wisconsin. Thus, these *Nagel* factors also weigh in Wisconsin's favor. In sum, we conclude that Cloeren engaged in "substantial not isolated activities" in Wisconsin, and WIS. STAT. § 801.05(1)(d) provides personal jurisdiction.[2]

### B. Due Process

¶ 13. Cloeren also argues that, even if Wisconsin's long-arm statute is satisfied, the exercise of personal jurisdiction over him in Wisconsin violates due process under the Fourteenth Amendment to the United States Constitution.

> Due process analysis presents two inquiries. The first inquiry is whether the defendant purposefully estab-

---

[2] Because we conclude personal jurisdiction exists by virtue of WIS. STAT. § 801.05(1)(d), we need not address Druschel's alternative arguments that jurisdiction is also proper under § 801.05(5)(c) and (e).

lished minimum contacts in the forum State. On this question, the plaintiff carries the burden. If this inquiry is answered affirmatively, then the defendant's forum-state contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. The defendant carries the burden on this question.

*Kopke*, 245 Wis. 2d 396, ¶ 23 (quotations and citations omitted). Our conclusion that Cloeren falls within Wisconsin's long-arm statute creates a rebuttable presumption that federal due process is also satisfied. *See Harley-Davidson Motor Co. v. Motor Sport, Inc.*, 960 F.Supp. 1386, 1391 (E.D. Wis. 1997).

¶ 14. Minimum contacts require "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). As discussed above, Cloeren made six to eight personal visits to Wisconsin, made frequent contact by telephone and was involved in the daily operation of a Wisconsin company.

¶ 15. However, Cloeren argues that the contacts of an individual, made as an agent of a business, do not count toward the "minimum contacts" required for personal jurisdiction. This concept, commonly referred to as the fiduciary shield doctrine, has not been adopted in Wisconsin. *See Norkol/Fibercore, Inc. v. Gubb*, 279 F.Supp.2d 993, 998 (E.D. Wis. 2003). Thus, Cloeren's contacts are considered regardless whether those contacts were made on behalf of a business. We conclude Cloeren's Wisconsin contacts amount to sufficient minimum contacts to satisfy due process.

¶ 16. Cloeren also argues jurisdiction does not comport with fair play and substantial justice. The United States Supreme Court has articulated five factors to consider: (1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the burden on the defendant; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

¶ 17. Cloeren argues that Druschel could obtain relief in a Texas forum, that Cloeren would prefer a Texas forum, and that a Wisconsin judgment would have to be enforced against Cloeren in Texas. However, these arguments do not undermine Wisconsin's interest in seeing that a Wisconsin resident can obtain relief in a Wisconsin court for damages arising out of a transaction in which a Wisconsin corporation was purchased. Further, Wisconsin is not an inconvenient forum because, as indicated, documentary evidence is equally available in either forum and the witnesses are located primarily in Wisconsin. Cloeren offers no argument regarding whether the shared interests of the states would be negatively affected by Wisconsin jurisdiction. In sum, Cloeren has not made a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See id.*

¶ 18. Cloeren also complains that the circuit court failed to distinguish between general and specific jurisdiction. "Specific jurisdiction is proper when the case itself arises out of or is related to the defendant's contact with the state; general jurisdiction is allowed when the suit does not arise from the defendant's

relationship with the state." *Harley-Davidson*, 960 F.Supp. at 1391. Cloeren argues that neither specific nor general jurisdiction is appropriate here; Druschel responds that the circuit court's factual findings support both types of jurisdiction.

¶ 19. Specific jurisdiction focuses on the relationship among the defendant, the forum and the litigation. *Id.* The circuit court found "[t]he only issue is whether [Cloeren] paid the balance due on the promissory note" and "[j]urisdiction over [Cloeren] in this lawsuit arises out of and is related to [Cloeren's] contacts with the State of Wisconsin." These findings support a conclusion that specific jurisdiction lies here: there is a connection between Cloeren's contact with Wisconsin and Druschel's claim. Because we conclude that Wisconsin has specific jurisdiction over Cloeren, we need not address whether general jurisdiction exists, as well.

### Offsets

¶ 20. Cloeren argues the circuit court erred by granting summary judgment in Druschel's favor for the entire value of the note without offsetting damages for Druschel's breaches of contract. We review a summary judgment independently, using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 21. The circuit court concluded, and Druschel does not challenge on appeal, that Cloeren has standing to assert those offsets to which Cloeren, Inc., is entitled

under the terms of the stock purchase agreement.[3] The issue that remains is whether the stock purchase agreement allows offset for Druschel's alleged breaches of the employment contract and non-compete agreement. This issue involves the interpretation of a contract, which presents a question of law that we review independently. *Farm Credit Servs. v. Wysocki*, 2001 WI 51, ¶ 8, 243 Wis. 2d 305, 627 N.W.2d 444. If the terms of the contract are plain and unambiguous, it is our duty to construe the contract according to its plain meaning even though one of the parties may have construed it differently. *Id.*, ¶ 12.

¶ 22. Section 10.1.4 of the stock purchase agreement states, "An amount for which Cloeren or the Company is entitled to receive indemnification under this Agreement is an 'Indemnified Loss.' " Cloeren argues Druschel's breaches are indemnified losses. First, Cloeren contends Druschel's breaches fall under § 10.1.1 of the stock purchase agreement, which requires Druschel to indemnify Cloeren for "[a]ny material inaccuracy in any representation or the breach of any warranty made by the Stockholders, the Company or any of them, in or pursuant to this Agreement." Cloeren argues the language "pursuant to" the stock

---

[3] The original note provided, "This note is subject to all offsets, credits and deductions allowed Maker under the terms of the Agreement, which is incorporated herein by reference." The replacement note provides:

> The original promissory note was express made subject to all offsets, credits and deductions allowed Maker under the terms of the Agreement, and an adjustment to the original promissory note of a principal reduction of $78,159.00 was agreed upon by Payee pursuant to Section 2.2 of the Agreement, as the Stockholders' Equity on the closing date statement that was prepared subsequent to the original promissory note is less than the Base Equity required in the Agreement.

purchase agreement demonstrates the parties' intent to incorporate the representations and warranties made in Druschel's employment contract and non-compete agreement into the stock purchase agreement. Thus, Cloeren concludes breaches of those additional contracts are indemnified losses under the stock purchase agreement.

¶ 23. However, § 4 of the stock purchase agreement specifically articulates the "representations and warranties" made by Druschel. Neither Druschel's employment contract nor his non-compete agreement is included as part of those representations or warranties. Thus, the plain language of the stock purchase agreement does not include breaches of Druschel's employment contract or non-compete agreement as indemnified losses under § 10.1.1.

¶ 24. Cloeren also argues Druschel's breaches are indemnified losses under § 10.1.4. Section 10.1.4 requires Druschel to indemnify Cloeren for Druschel's failure to "perform or observe any term, provision, covenant, agreement or condition in this Agreement." However, Druschel's compliance with his employment contract is not a "term, provision, covenant, agreement or condition" of the stock purchase agreement.

¶ 25. Cloeren contends the employment contract and non-compete agreement should be incorporated into the stock purchase agreement. However, § 15.2 of the stock purchase agreement contains an integration clause, providing that it encompasses the entire agreement of the parties. Thus, the unambiguous language of the stock purchase agreement does not include breaches of either the employment contract or non-compete agreement as indemnified losses and, there-

872

fore, Cloeren is not entitled to offset damages for the alleged breaches from the amount due under the promissory notes.[4]

*By the Court.*—Judgment affirmed.

[4] Because we conclude the notes and stock purchase agreement do not include breaches of the employment contract or non-compete agreement as indemnified losses, we need not address: (1) whether Cloeren raised genuine issues of material fact that Druschel breached the agreements; (2) whether Cloeren waived his argument that he is entitled to offset under the non-compete agreement; (3) whether the non-compete agreement violates WIS. STAT. § 103.465; (4) whether Cloeren waived his right to offset by failing to provide timely notice as required by the stock purchase agreement; and (5) whether claim preclusion bars Cloeren from claiming offset. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (court should decide cases on the narrowest possible grounds).