Johnson Litho Graphics of Eau Claire, Ltd.,
Plaintiff-Appellant,

v.

James M. Sarver, d/b/a National Print Service,
Defendant-Respondent.

Court of Appeals

*No. 2010AP1441. Submitted on briefs January 5, 2011.
—Decided September 6, 2012.*

2012 WI App 107

(Also reported in 824 N.W.2d 127.)

374

376

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark N. Mathias* of *Freund Law Office*, Eau Claire.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas W. Anderson* of *Herrick & Hart, S.C.*, Eau Claire.

Before Lundsten, P.J., Higginbotham and Blanchard, JJ.

¶ 1. HIGGINBOTHAM, J. This is a breach of contract action brought by Johnson Litho Graphics of Eau Claire, Ltd., against James M. Sarver, d/b/a National Print Service, to collect on a debt for printing services. Johnson Litho appeals a circuit court order dismissing its claims against Sarver for lack of personal jurisdiction. The court determined that, although Wisconsin's long-arm statute, WIS. STAT. § 801.05 (2009–10),[1] extended to Sarver, the exercise of jurisdiction failed to comport

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

with due process requirements under the Fourteenth Amendment. We disagree and conclude that the court has personal jurisdiction over Sarver. We therefore reverse and remand for further proceedings.

## BACKGROUND

¶ 2. The pertinent facts are undisputed and are taken from the evidentiary hearing transcript. In February 2000, Sarver, an Illinois resident, telephoned Johnson Litho, a commercial printing company with a sole office in Eau Claire. Sarver expressed an interest in using Johnson Litho's printing services for Sarver's Illinois company, National Print Service. Following this contact, Sarver commenced a business relationship with Johnson Litho, using the company as his exclusive source for printed materials.

¶ 3. To place a purchase order, Sarver contacted Johnson Litho by telephone, email or facsimile. Johnson Litho responded by faxing or emailing a quote form containing information, such as the price of the order, to Sarver for his signature. To indicate approval of an order, Sarver signed the quote form and faxed it to Johnson Litho. Johnson Litho prepared sample proofs based on information that Sarver's customers provided directly to Johnson Litho and sent the proofs to Sarver's customers for review. If a customer requested changes to the sample proof, Johnson Litho required Sarver to approve the changes in writing. At Sarver's direction, Johnson Litho would ship the goods directly to Sarver's customers. To make payment, Sarver mailed checks to Johnson Litho.

¶ 4. Consistent with this practice, Sarver, who became an Arizona resident in 2002, contacted Johnson Litho in October 2006 to place an order on behalf of a

New York customer. Between October and December, Sarver signed three quote forms placing three orders for the New York customer. After obtaining each quote form, Johnson Litho prepared the order and, upon receiving approval from Sarver, shipped the goods to the New York customer at requested locations in New York and New Jersey. The customer accepted the goods, and neither Sarver nor his customer indicated any dissatisfaction with them. After making several small payments toward the invoice amount, Sarver sent a letter to Johnson Litho to notify it that he would not pay the remaining balance due.

¶ 5. Johnson Litho filed a complaint against Sarver in the Eau Claire County Circuit Court, demanding judgment for the remaining balance of $47,923.64, plus interest and other charges. In his answer to the complaint, Sarver asserted an affirmative defense that the court lacked personal jurisdiction over him. The court held an evidentiary hearing and determined that WIS. STAT. § 801.05(5)(c) and (d) of the long-arm statute extended to Sarver. However, relying on *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979), the court concluded that the exercise of personal jurisdiction would violate due process under the Fourteenth Amendment. Accordingly, the court dismissed the action. Johnson Litho appeals.

## DISCUSSION

¶ 6. The sole issue on appeal is whether the circuit court erred in dismissing the action for lack of personal jurisdiction. A two-step inquiry determines whether personal jurisdiction may be conferred on a

nonresident defendant. *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. First, the nonresident must have sufficient minimum contacts with the state under Wisconsin's long-arm statute, WIS. STAT. § 801.05. *Stayart v. Hance*, 2007 WI App 204, ¶ 12, 305 Wis. 2d 380, 740 N.W.2d 168. Although the plaintiff has the burden of establishing jurisdiction under the long-arm statute, courts construe the statute liberally in favor of exercising jurisdiction. *Lincoln v. Seawright*, 104 Wis. 2d 4, 9, 310 N.W.2d 596 (1981). Second, the exercise of jurisdiction must comport with due process requirements under the Fourteenth Amendment so that maintaining the lawsuit does not offend "traditional notions of fair play and substantial justice." *Regal Ware, Inc. v. TSCO Corp.*, 207 Wis. 2d 538, 542, 558 N.W.2d 679 (Ct. App. 1996) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Whether a court has personal jurisdiction over a nonresident defendant is subject to de novo review. *FL Hunts, LLC v. Wheeler*, 2010 WI App 10, ¶ 7, 322 Wis. 2d 738, 780 N.W.2d 529; *Brown v. LaChance*, 165 Wis. 2d 52, 65, 477 N.W.2d 296 (Ct. App. 1991).

## A. WISCONSIN'S LONG-ARM STATUTE

¶ 7. WISCONSIN STAT. § 801.05(5)(d) provides that a court has personal jurisdiction in any action which: "[r]elates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or direction."

¶ 8. Johnson Litho argues that this subsection applies because the action relates to goods shipped from Wisconsin on Sarver's order and direction. In response, Sarver contends that Wisconsin does not have personal jurisdiction over him because the goods were not

shipped directly to him but to his customer in another state. He asserts that the statute does not apply unless the goods are delivered directly to the defendant. In reply, Johnson Litho contends that Sarver cannot evade personal jurisdiction simply because he directed that the goods be shipped to a third party rather than to himself. Stated differently, Johnson Litho contends that, because the goods were delivered at Sarver's direction, it is immaterial whether the goods were delivered directly to him or to a third party. The key consideration, according to Johnson Litho, is whether the nonresident defendant ordered or directed the shipment.

¶ 9. To resolve this issue, we must determine what is meant by "to the defendant" in the phrase "to the defendant on the defendant's order or direction" in WIS. STAT. § 801.05(5)(d). As stated above, Sarver argues that the plain meaning of the statute is that the court may obtain personal jurisdiction over him only when the goods are shipped directly to him, rather than to a third party at his order or direction. We conclude that Sarver's construction is unreasonable because it would produce an absurd result.

¶ 10. When interpreting a statute, we begin with the statutory language. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we stop the inquiry and apply that meaning. *Id.* We interpret statutory language "in the context in which it is used" by considering words "not in isolation but as part of a whole." *Id.*, ¶ 46. In addition, we read statutory language reasonably "to avoid absurd or unreasonable results." *Id.* "If this process of analysis yields a plain, clear statutory meaning, then there is no

ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted). The ultimate purpose of statutory interpretation is to give full effect to the policy choices of the legislature. *See id.*, ¶ 44. Statutory interpretation is a question of law subject to de novo review. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995).

¶ 11. Under Sarver's construction of the phrase "to the defendant" in Wis. Stat. § 801.05(5)(d), a nonresident defendant, who otherwise satisfies the requirements of personal jurisdiction under § 801.05(5)(d), would be able to evade personal jurisdiction by the simple mechanism of directing that goods be shipped from Wisconsin to a third party that has some connection with the nonresident defendant. For instance, in this case, Sarver requested Johnson Litho to ship goods from Wisconsin directly to his customer in New York and not to his residence in Arizona. We see no principled difference under the long-arm statute between nonresidents who direct Wisconsin companies to ship goods directly to them and nonresidents who instead direct Wisconsin companies to ship goods to third parties. Under Sarver's interpretation, he could have avoided jurisdiction simply by having the goods sent to a neighbor.

¶ 12. We conclude that the meaning of the phrase "to the defendant" in Wis. Stat. § 801.05(5)(d) includes shipping goods from Wisconsin to third parties at the defendant's order or direction.[2] This construction of § 801.05(5)(d) is consistent with the admonition that

---

[2] Because we conclude that personal jurisdiction exists under the long-arm statute pursuant to Wis. Stat.

courts are to construe the long-arm statute liberally in favor of exercising jurisdiction. *See Lincoln*, 104 Wis. 2d at 9.

¶ 13. This construction is also consistent with a central purpose of the long-arm statute, namely, to impose personal jurisdiction on the nonresident who solicits "a continuing business relationship with anyone in the state." *Druschel v. Cloeren*, 2006 WI App 190, ¶ 7, 295 Wis. 2d 858, 723 N.W.2d 430 (citation omitted). Sarver's construction of the statute would defeat this purpose by allowing defendants to avoid personal jurisdiction simply by directing goods to be shipped to a nonresident third party. Stated simply, the long-arm statute may not be read to permit a nonresident who otherwise satisfies the requirements of personal jurisdiction under WIS. STAT. § 801.05(5)(d) to evade personal jurisdiction by directing goods to be shipped from Wisconsin to a third party.

¶ 14. Applying the above construction to the facts of this case, we conclude that the long-arm statute confers personal jurisdiction over Sarver. It is undisputed that Johnson Litho shipped the goods at Sarver's direction to a customer in New York. Additionally, Sarver does not argue that his contacts with Wisconsin do not otherwise satisfy the requirements of WIS. STAT. § 801.05. Indeed, Sarver provides no argument that the legislature intended to allow parties to so easily evade personal jurisdiction. We therefore conclude that, although the goods were not shipped directly *to* Sarver,

---

§ 801.05(5)(d), we need not address Johnson Litho's argument that personal jurisdiction also exists under WIS. STAT. § 801.05(5)(c).

the court may exercise personal jurisdiction over Sarver because Johnson Litho shipped the goods from Wisconsin to a third party at Sarver's order or direction.

## B. DUE PROCESS REQUIREMENTS

■■ ■

¶ 15. Having determined that personal jurisdiction exists under the long-arm statute under Wis. Stat. § 801.05(5)(d), we turn to the second inquiry: whether the exercise of jurisdiction comports with the constitutional guarantee of due process. Courts presume that compliance with the long-arm statute satisfies due process. *Stayart*, 305 Wis. 2d 380, ¶ 17. This is because § 801.05 codified the minimum contacts jurisdictional test in order to protect the due process rights of nonresidents. *Capitol Fixture & Woodworking Grp. v. Woodma Distribs., Inc.*, 147 Wis. 2d 157, 161, 432 N.W.2d 647 (Ct. App. 1988). However, the defendant may rebut the presumption by showing that, despite compliance with § 801.05, there are insufficient contacts in Wisconsin. *Stayart*, 305 Wis. 2d 380, ¶ 17.

■■■■

¶ 16. Two questions govern whether the exercise of personal jurisdiction comports with due process: (1) whether the defendant purposefully established minimum contacts in Wisconsin; and (2) if so, whether the defendant's contacts in Wisconsin comport with notions of fair play and substantial justice, in light of relevant factors. *Id.*, ¶ 18. In the due process analysis, Johnson Litho carries the initial burden of showing that Sarver purposefully established minimum contacts with the state, and, if so, the burden then shifts to Sarver to present "a compelling case that the presence of some other considerations would render jurisdiction

unreasonable." *Kopke*, 245 Wis. 2d 396, ¶ 23 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Notably, United States Supreme Court cases are controlling with respect to limits imposed on the long-arm statute by due process standards.[3] *Zerbel v. H.L. Federman & Co.*, 48 Wis. 2d 54, 60, 179 N.W.2d 872 (1970).

## 1. Minimum Contacts

¶ 17. Johnson Litho contends that Sarver established sufficient minimum contacts in Wisconsin by: (1) soliciting a business relationship with a Wisconsin company; (2) placing purchase orders with the knowledge that the goods would be manufactured in Wisconsin; (3) making repeated contacts with Johnson Litho via telephone, email, and facsimile; (4) approving sample proofs created by Johnson Litho; (5) directing shipment of goods; and (6) making payments received in Wisconsin. Johnson Litho emphasizes that, over the course of the six-year business relationship, it never solicited Sarver's business or requested that Sarver use it as his exclusive printing source. Johnson Litho ac-

---

[3] Although we are bound only by United States Supreme Court opinions imposing limits on the long-arm statute by due process standards, we may adopt the reasoning of federal court decisions that we find persuasive. *Klein v. Board of Regents*, 2003 WI App 118, ¶ 13, 265 Wis. 2d 543, 666 N.W.2d 67; *Streff v. Town of Delafield*, 190 Wis. 2d 348, 356–57, 526 N.W.2d 822 (Ct. App. 1994). For the reasons we later explain, we are not persuaded by the Seventh Circuit's decision in *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979). However, we are persuaded by the Seventh Circuit's decisions in *Madison Consulting Group v. South Carolina*, 752 F.2d 1193 (7th Cir. 1985), and *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757 (7th Cir. 2008).

knowledges that there is no evidence that Sarver physically entered Wisconsin for business purposes, but argues that since the time he initiated contact with Johnson Litho, Sarver has had many business contacts with Johnson Litho in Wisconsin.

¶ 18. Sarver responds that Johnson Litho has failed to establish that he had sufficient minimum contacts in Wisconsin because, like the defendant in *Lakeside*, Sarver made no contacts in Wisconsin except for placing purchase orders by telephone, email and facsimile. Sarver emphasizes that, similar to the plaintiff in *Lakeside*, Johnson Litho had absolute control over the decision to conduct its business in Wisconsin, and it made that decision unilaterally. Sarver contends that having communications with a company that decides unilaterally to perform its contractual obligations in Wisconsin is insufficient to establish minimum contacts.

¶ 19. The circuit court agreed with Sarver and concluded that exercising personal jurisdiction over him failed to comport with due process requirements. Applying the reasoning in *Lakeside*, the court found that it would be unfair to assert personal jurisdiction over Sarver when his only contacts in Wisconsin involved placing purchase orders via telephone, email and facsimile, as well as making payments. We disagree and conclude that, under the undisputed facts, Sarver has purposefully established sufficient minimum contacts in Wisconsin.

¶ 20. To demonstrate that Sarver purposefully established minimum contacts in Wisconsin, Johnson Litho must show that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court

there." *Kopke*, 245 Wis. 2d 396, ¶ 24 (quoting *Burger King*, 471 U.S. at 474). A nonresident may reasonably anticipate being haled into a Wisconsin court when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Burger King*, 471 U.S. at 475). Purposeful availment, which is the baseline focus of the minimum contacts analysis, "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (citation omitted). To determine whether there is purposeful availment, courts consider the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

¶ 21. Under due process requirements, a nonresident defendant who initiates negotiations with and solicits a Wisconsin company to enter into a contract may be said to have established sufficient minimum contacts in this state. *See Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1194–95, 1201 (7th Cir. 1985) (concluding that personal jurisdiction existed over a corporation owned as an asset by South Carolina that solicited a Wisconsin company to prepare a study and report concerning a dam). It is undisputed that Sarver initiated contact with Johnson Litho in February 2000 when he called to speak to the owner of the company to obtain quotes, purchase printed materials and find out more about the company for the purpose of doing business with it. It is also undisputed that Sarver initiated contact with Johnson Litho each time he

placed a new purchase order, including the three purchase orders from 2006 that gave rise to this lawsuit. There is no evidence that Johnson Litho ever initiated contact with Sarver during the course of the six-year relationship or requested that he place a new purchase order with the company. Because Sarver, like the defendant in *Madison Consulting Group*, "initiat[ed] several significant links with the forum plaintiff leading to the transaction at issue," we conclude that Sarver purposefully conducted substantial activities in Wisconsin, invoking the benefits and protections of its laws. *Id.* at 1203; *see O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176–77 (7th Cir. 1971) (conferring personal jurisdiction over a defendant who initiated negotiations by telephone); *L.B. Sales Corp. v. Dial Mfg., Inc.*, 593 F. Supp. 290, 295 (E.D. Wis. 1984) (conferring personal jurisdiction over a defendant who initiated negotiations by mail).

¶ 22. A nonresident defendant who contemplates the performance of a contract in Wisconsin may also create sufficient minimum contacts. *See Madison Consulting Grp.*, 752 F.2d at 1204 (concluding that whether the defendant contemplated performance of the contract in Wisconsin at the time of contracting is relevant to the due process analysis). According to the record, Sarver knew when he initiated contact that Johnson Litho was located in Eau Claire. Thus, Sarver understood that Johnson Litho faxed quotes, prepared orders, printed materials, shipped goods, and deposited checks in or from Eau Claire. Because Sarver solicited Johnson Litho with the understanding that it would perform its contractual obligations in Wisconsin, it is reasonable to require Sarver to defend this case in Wisconsin. *See Zerbel*, 48 Wis. 2d at 63–64 (concluding that personal

jurisdiction existed where "it was reasonable to infer that defendant knew the work would be done by plaintiff in this state").

¶ 23. Finally, a nonresident defendant who makes repeated contacts or creates continuing obligations with a Wisconsin company may establish sufficient minimum contacts. *See Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 763 (7th Cir. 2008) (concluding that contacts via telephone, email, and facsimile were sufficient to establish minimum contacts for due process purposes where the contract required "continuing obligations" and "repeated contacts"); *see also Regal Ware*, 207 Wis. 2d at 540–41. In *Regal Ware*, a Wisconsin company that manufactured and distributed cookware entered into, and later terminated, a longstanding contract with TSCO, a company that brokered its cookware to Japanese distributors for a commission. *Id.* The issue on appeal was whether the court had personal jurisdiction over TSCO. *Id.* at 540. Addressing the due process prong of the personal jurisdiction test, the court concluded that TSCO had "avail[ed] itself of the privilege of conducting activities within [Wisconsin], thus invoking the benefits and protections of its laws," through its long-term contractual agreements with Regal Ware. *Id.* at 545 (citation omitted). Based on those agreements, Regal Ware manufactured cookware in Wisconsin and shipped it to TSCO's customers in Japan. *Id.* at 540–41 (citation omitted). The court concluded that "TSCO's agreements created 'continuing obligations' between itself and Regal Ware such that it is not unreasonable to require it to submit to the burden of litigation here." *Id.* at 545.

¶ 24. Here, as in *Regal Ware*, Sarver had multiple contacts with Johnson Litho over a six-year period that

gave rise to numerous contracts containing reciprocal obligations. Sarver had multiple contacts each time he placed an order by faxing quote forms, approving changes, directing shipments, and making payments. Not only did Sarver have multiple contacts each time he placed a purchase order, he continued to place new orders throughout the six-year business relationship. Indeed, as we have indicated, Sarver placed at least three purchase orders in 2006, requiring him to solicit Johnson Litho's business three separate times. This was not a one or two time business relationship. Accordingly, Sarver's contacts "cross[ed] the threshold from offending due process to sufficient minimum contacts." *Citadel Grp.*, 536 F.3d at 763.

¶ 25. As we have noted, Sarver argues, relying on *Lakeside*, that Johnson Litho cannot establish that he had sufficient minimum contacts solely on the ground that he placed purchase orders with a company that decided to operate in Wisconsin and maintained absolute control over that decision. Stated differently, Sarver contends that, because Johnson Litho made the unilateral decision to perform its contractual obligations in Wisconsin, he did not purposefully avail himself of the privilege of conducting activities in Wisconsin. Sarver further argues that he did not have sufficient minimum contacts in Wisconsin because the contracts did not provide where the orders had to be performed and the orders could have been performed in another state.

¶ 26. Sarver's reliance on *Lakeside* is misplaced. In that case, agents from Lakeside traveled from Wisconsin to West Virginia to solicit Mountain State to enter into a contract for Lakeside to manufacture structural steel assemblies for use in a construction project in Virginia. *Lakeside*, 597 F.2d at 598. Mountain

State accepted the proposal and mailed a purchase order to Lakeside in Milwaukee. *Id.* However, Mountain State withheld payment for part of the order on the basis that the goods were defective in certain respects. *Id.* Lakeside filed a lawsuit in Wisconsin and asserted that the court had personal jurisdiction over Mountain State because Mountain State ordered goods from a Wisconsin company with the knowledge that the goods would likely be manufactured in and shipped from Wisconsin. *Id.* at 600. Lakeside also asserted that the court had personal jurisdiction over Mountain State because Mountain State communicated with Lakeside by mail and telephone with respect to contract negotiation and performance. *Id.* The court determined that Mountain State had not established sufficient minimum contacts in Wisconsin because Lakeside initiated contact with Mountain State and because Lakeside conducted its activities unilaterally. *Id.* at 603. It was in this context that the court rejected Lakeside's argument that ordering goods from Wisconsin and having contact by telephone or mail was sufficient to confer personal jurisdiction. *Id.* at 604.

¶ 27. We first observe that the conclusions in *Lakeside* that Sarver relies on have been brought into question. In *Madison Consulting Group*, the court pointed out that, even at the time *Lakeside* was decided, "both federal and state courts were badly split over the correctness of its basic conclusions." *Madison Consulting Grp.*, 752 F.2d at 1197. The court also pointed out that the United States Supreme Court and other federal courts had stepped back from *Lakeside* and taken a broader view of the circumstances that warrant the court's exercise of personal jurisdiction, using a fact-intensive inquiry to determine whether sufficient minimum contacts exist. *See id.* at 1199; *see also*

*Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). For instance, in *Lakeside*, the court took a narrow view in rejecting the argument that the defendant's contemplation that goods would be manufactured in Wisconsin was a relevant consideration. *Lakeside*, 597 F.2d at 603. However, in *Madison Consulting Group*, the court took a broader view in determining that, although not dispositive, evidence that the defendant clearly contemplated performance in Wisconsin is relevant to determine whether sufficient minimum contacts exist. *Madison Consulting Grp.*, 752 F.2d at 1204.

¶ 28. Second, in *Lakeside*, the Wisconsin company initiated contact with the defendant in another state. Here, in contrast, Sarver initiated contact with Johnson Litho in Wisconsin. Whether the defendant initiated or solicited the business transaction "has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction." *Id.* at 1202. Thus, Sarver's solicitation of business with a Wisconsin business is significant enough to warrant personal jurisdiction over him. As we have noted, while Sarver is correct that he had no control over where Johnson Litho performed its contractual obligations and that the contract did not expressly require performance in Wisconsin, Sarver clearly contemplated and recognized that each time he placed an order, Johnson Litho would perform its obligations at its plant in Eau Claire.

¶ 29. Sarver contends that there are insufficient minimum contacts because here, as in *Lakeside*, there is no proof he physically entered Wisconsin or had contacts with Wisconsin other than his business relationship with Johnson Litho. He notes that the appropriateness of exercising jurisdiction is in proportion to

the defendant's relationship with the state and argues that he had an attenuated relationship with Wisconsin. *See Lakeside*, 597 F.2d at 602 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 37, cmt. a (1971)). We disagree.

■■ ■

¶ 30. A nonresident defendant's communications with a forum plaintiff via telephone, email and facsimile may comport with due process principles, even when the defendant has not entered the state physically. Importantly, "a foot-fall on the State's soil" is not a requirement for establishing sufficient minimum contacts in Wisconsin. *Madison Consulting Grp.*, 752 F.2d at 1200 (citation omitted); *Regal Ware*, 207 Wis. 2d at 544 ("The fact that a defendant has never physically entered the forum may not be enough to avoid jurisdiction."). Moreover, "framing the issue in terms of purchases of goods by mail and telephone" may, at times, "understate[] the extent of [the] relationship," particularly where there are multiple contacts or continuing obligations, as is the case here. *Sub-Zero Freezer Co., Inc. v. R.J. Clarkson Co., Inc.*, 159 Wis. 2d 230, 236, 464 N.W.2d 52 (Ct. App. 1990). In the modern age, "a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* (quoting *Burger King*, 471 U.S. at 475–76). This observation, first made in 1985, is only truer today with huge advancements in communications technology. Although Sarver's contacts with Wisconsin were confined primarily to communication via telephone, email and facsimile, his contacts were substantial because he solicited a six-year business relationship with a Wisconsin company.

¶ 31. In summary, we conclude that Sarver engaged in sufficient minimum contacts by soliciting and making numerous contacts with Johnson Litho. Like in *Madison Consulting Group*, Sarver contacted a company to initiate a business relationship and contemplated performance of multiple contracts in that company's home state. Moreover, as occurred in *Regal Ware* and *Citadel Group*, Sarver created continuing obligations by placing new purchase orders, with each requiring multiple contacts. For these reasons, we conclude that Sarver did not engage in "random" or "attenuated" contacts resulting from Johnson Litho's unilateral activity, but, to the contrary, solicited a business relationship in which he controlled when to order goods, which orders to approve, where to direct shipments, and how to make payments. By voluntarily assuming these interstate obligations involving Wisconsin activities, Sarver established sufficient minimum contacts in Wisconsin, satisfying the first prong of the due process analysis.

2. Fair Play and Substantial Justice

¶ 32. We next determine whether the exercise of personal jurisdiction offends notions of fair play and substantial justice. As we have explained, Sarver has the burden of establishing that the exercise of personal jurisdiction offends notions of fair play and substantial justice. *Stayart*, 305 Wis. 2d 380, ¶ 18. To make this determination, we consider the following five factors:

(1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the burden on the defendant;

(4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Kopke*, 245 Wis. 2d 396, ¶ 39 (citation omitted).

¶ 33. In balancing the factors, we do not consider any single factor to be dispositive. *See International Shoe*, 326 U.S. at 319 (rejecting the application of a mechanical or quantitative test to determine whether personal jurisdiction exists). We note that when there is a strong showing that the nonresident defendant purposefully availed itself of the benefits and protections of Wisconsin law, "a lower showing of fairness suffices to permit personal jurisdiction." *Andersen v. Sportmart, Inc.*, 57 F. Supp. 2d 651, 661 (N.D. Ind. 1999) (citing *Burger King*, 471 U.S. at 462). Applying the five factors to the undisputed facts in this case, we conclude that the exercise of personal jurisdiction over Sarver does not offend traditional notions of fair play and substantial justice. We address each factor in turn.

a. Wisconsin's Interest in Adjudicating the Dispute

¶ 34. First, Sarver argues that Wisconsin does not have a strong interest in adjudicating an interstate contract dispute involving a corporation. In support, Sarver once again cites to *Lakeside* for the proposition that "[t]he forum state has a greater interest in protecting its citizens by providing a local forum in cases which involve effects 'of a sort highly dangerous to persons and things'" such as product liability or other tort cases. *Lakeside*, 597 F.2d at 602 n.11 (citation omitted). Sarver's argument misses the mark. It is well estab-

lished that "the State of Wisconsin has an unquestionable interest in providing its citizenry with a forum to adjudicate claims arising here," including breach of contract claims. *Kopke*, 245 Wis. 2d 396, ¶ 40; *see also Druschel*, 295 Wis. 2d 858, ¶ 12 ("Wisconsin has an interest in protecting its residents from breaches of contract."). Wisconsin's interest in adjudicating this dispute may not be overwhelmingly strong, "but even in commercial contract cases, the forum has an interest that carries at least some weight in the due process calculus." *Madison Consulting Grp.*, 752 F.2d at 1205.

b. Johnson Litho's Interest in Obtaining Convenient Relief

¶ 35. As to Johnson Litho's interest in obtaining convenient and effective relief, Sarver argues that Johnson Litho would be minimally burdened by bringing this action in Arizona. Sarver acknowledges that, from Johnson Litho's perspective, it is more convenient to prosecute this lawsuit in Wisconsin. He argues, however, that Johnson Litho should have considered Sarver's burden in defending this lawsuit in Wisconsin. This argument also misses the mark. Wisconsin has a strong interest in providing "a convenient forum for redressing injuries arising here and inflicted by out-of-state actors." *Stayart*, 305 Wis. 2d 380, ¶ 30. In this case, Johnson Litho's injury arises out of Sarver's alleged refusal to make full payment for goods that Sarver knew would be manufactured in Wisconsin. *See Brown*, 165 Wis. 2d at 69 (concluding that Wisconsin was a convenient forum when the transaction involved Wisconsin real estate and occurred in Wisconsin). Accordingly, Wisconsin has an interest in providing Johnson Litho with a convenient forum to redress its alleged injury.

### c. Sarver's Burden in Defending the Lawsuit in Wisconsin

¶ 36. As to the burden of defending the lawsuit here, Sarver argues that his burden outweighs other considerations. We acknowledge that Sarver's burden in defending this lawsuit in Wisconsin is an important concern. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (stating that the burden on the defendant is always a primary concern in the due process analysis). However, Sarver's burden in defending the lawsuit here "is determinative exclusive of other factors only in those cases where there is an egregious absence of contacts, ties or relations between the defendant and the forum state." *Madison Consulting Grp.*, 752 F.2d at 1204 (citation omitted). That is not the case here. Here, Sarver's burden is not determinative because, as established above, he initiated numerous contacts in Wisconsin over the course of a six-year business relationship. Thus, Sarver's burden in defending the suit here is outweighed by other relevant considerations, including the significant ties he established in Wisconsin.

### d. The Interstate Judicial System's Interest in Efficient Resolution

¶ 37. As to the judicial system's interest in obtaining the most efficient resolution of controversies, Johnson Litho points out that courts consider where witnesses and evidence are likely to be located. *See Andersen*, 57 F. Supp. 2d at 663; *Druschel*, 295 Wis. 2d 858, ¶ 17. In this case, with the exception of Sarver, the pertinent witnesses are located in Wisconsin. Moreover, Johnson Litho's records relating to its business rela-

tionship with Sarver are located in Eau Claire. Thus, it is readily apparent that it is most efficient to resolve this breach of contract dispute in Wisconsin.

e. The Shared Interest of the Several States in Furthering Substantive Social Policies

¶ 38. Finally, as to the shared interest of the several States in furthering fundamental substantive social policies, Sarver asserts that, as indicated in *Lakeside*, imposing personal jurisdiction on a nonresident defendant who "has no relationship with the forum state other than some of the effects of a contract he has entered into" will likely have a chilling effect on interstate transactions. *Lakeside*, 597 F.2d at 603 n.12. According to Sarver, nonresidents will refrain from engaging in business transactions involving Wisconsin companies out of fear that Wisconsin courts will exercise personal jurisdiction over them based on attenuated and fortuitous contacts. We are not persuaded. Only nonresidents, such as Sarver, who have sufficient minimum contacts are at risk of having to defend a lawsuit in Wisconsin. Here, as we have explained, Sarver did not have attenuated contacts but rather solicited a long-standing business relationship with a Wisconsin company. Sarver has not shown how the exercise of personal jurisdiction over him would have the alleged effect of chilling interstate commerce. *Cf. Froning & Deppe, Inc. v. Continental Ill. Nat'l Bank & Trust Co.*, 695 F.2d 289, 294 (7th Cir. 1982) (determining that interstate commerce would likely be chilled by "subjecting a bank to suit in any state from which a check cashed by one of its customers might originate").

403

### f. Balancing the Factors

¶ 39. We again emphasize that it is the nonresident defendant who has the burden to show that, even though minimum contacts are met, the exercise of personal jurisdiction is unfair. *Kopke*, 245 Wis. 2d 396, ¶ 23. In this case, Sarver has failed to meet his burden of presenting "a compelling case" that the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. While Sarver may be burdened by defending the lawsuit here, Wisconsin has an interest in adjudicating a breach of contract dispute stemming from business transactions that occurred in Wisconsin. In addition, Johnson Litho has an interest in obtaining convenient and effective relief in Wisconsin because it performed its contractual obligations here. Moreover, because the witnesses and evidence are primarily located here, the exercise of personal jurisdiction over Sarver will advance the interstate judicial system's interest in efficiently resolving controversies. Finally, Sarver has failed to demonstrate that the court's exercise of personal jurisdiction over him will have the effect of undermining substantive social policies by chilling interstate commerce.

## CONCLUSION

¶ 40. Because the circuit court incorrectly dismissed this lawsuit for lack of personal jurisdiction, this matter is reversed and remanded to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.